POPPE (ZEREGA v.). See Case No. 18,213.

## Case No. 11,279.

### POPPENHUSEN v. FALKE et al.

[2 Fish. Pat. Cas. 181; 4 Blatchf. 493.] 2

Circuit Court, S. D. New York. June 13, 1861.

PATENTS — INJUNCTION — DEFENDANTS ACTING AS SERVANTS OF CORPORATION — INFRINGEMENT — EXPERIMENT—BUSINESS PURPOSE — COMMISSIONER'S DECISION—REISSUE—DISCLAIMER—ERROR.

1. Where defendants are acting in concert in the infringement of a patent, the fact that,

---

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2 [Reported by Samuel S. Fisher, Esq., and by Hon. Samuel Blatchford, District Judge, and here compiled and reprinted by permission.]

as between themselves, they are connected together as the stockholders, managers, and servants of a corporation, does not exempt them from the restraints of an injunction.

[Cited in American Cotton-Tie Supply Co. v. McCready, Case No. 295; Needham v. Washburn, Id. 10,082; Herman v. Herman, 29 Fed. 93; Cahoone Barnet Manuf'g Co. v. Rubber & Celluloid Harness Co., 45 Fed. 584.]

2. An experiment with a patented article for the sole purpose of gratifying a philosophical taste, or curiosity, or for mere amusement, is not an infringement of the rights of a patentee.

3. But, otherwise, if the experiments are made with a view to adapt the machine or process to use in the prosecution of business.

4. The decision of the commissioner of patents in cases of reissue, is, if not final and conclusive, at least prima facie evidence, that the reissued patent is for the same invention as the original, in all cases where no doubts are raised in the mind of the court, by an examination of the instruments themselves, and no fraud is proved.

5. Inadvertence and error may occur as well in the disclaimer as in the claim; and, whenever the mistake occurs, may be cured by reissue.

6. It matters not how or when the mistake was discovered by the patentee provided it was a mistake. Of that the commissioner of patents decides, in the first instance, and his decision is prima facie evidence of the fact, so far as the good faith of the transaction is concerned, until the contrary is shown.

7. The great question will, after all, be, whether or not the processes or the application of them as described in the new specification, are a part of the invention of the patentee.

8. Where the validity of an original patent has been adjudicated upon and sustained, but it is subsequently reissued, and the reissue covers a wider space than the original, all that lies between the limits fixed by the first and those fixed by the second is disputed territory; and, if the alleged infringement lies wholly in that disputed territory, the defendant will not be concluded, upon a motion for a preliminary injunction, by the adjudication upon the original patent.

[Cited in Brown v. Hinkley, Case No. 2,012.]

9. Whatever difficulty or uncertainty there may be arising out of the difference in the two specifications, is the fault or misfortune of the complainant, and not of the defendant, and should be borne by the former and not the latter.

In equity. This was a motion [by Conrad Poppenhusen] for a preliminary injunction to restrain the defendants from infringing letters patent granted to Otto P. Meyer December 20, 1853 [No. 10,339], and April 4, 1854 [No. 10,741], for improved modes of treating caoutchouc, and other vulcanizable gums. A report of a trial at law, and of a motion for a preliminary injunction, and for an attachment, founded upon those patents, will be found in the cases of Poppenhusen v. New York Gutta Percha Comb Co. [Cases Nos. 11,281, 11,283, and 11,282]. After the decision of the latter case, the patent was reissued, viz: on August 16, 1859 [No. 797], with the following claim: "I claim the mode of operation, or mode of procedure, substantially such as herein described, which said mode of operation consists in the employment of a pliable or flexible envelope, substantially

such as herein described, or the equivalent thereof, applied by pressure to the hard compound of vulcanizable gum, while in the green or plastic state, so as to insure the contact of such covering with the surface of the compound, and, while thus covered or protected, subjecting it to the vulcanized heat, and when vulcanized stripping off such covering; the whole process being substantially as specified."

George D. Sargent, for complainant.
Abbett & Fuller, for defendants.

SHIPMAN, District Judge. There is no occasion in the present stage of this case to enumerate in detail the allegations of this bill. Its object is to restrain the respondents, by injunction, from infringing the rights of the complainant, alleged to be secured to him by two patents for improved modes of treating caoutchouc and other vulcanizable gums, and for an account. One of the patents, denominated the "grease patent," bears date December 20, 1853. The other, called the "tin foil patent," is dated April 4, 1854, but reissued August 16, 1859. The bill is founded upon the "grease patent," and upon the reissued "tin foil patent."

The title to both patents is in the complainant; and the present motion is for a preliminary injunction to restrain the respondents from infringing both or either of them. A preliminary objection has been suggested to the bill itself, on the alleged ground that it does not charge an infringement by the joint acts of the respondents; and it is urged that, as the answer shows that the respondents are the mere employees of a corporation known as the "New York Gutta Percha and India Rubber Vulcanite Company," and that all the acts alleged against them, if any were done by them, were performed in the capacity of servants of such corporation, they are therefore not the proper parties, or, if the proper parties, that they are improperly joined in the bill. In view of the conceded facts, I do not think these objections are important. The allegation in the bill is, "that the respondents are using," etc., which although it might be more explicit, is sufficient in point of form. The proof supports the allegation, as it shows that whatever the respondents have done, they have done in concert, in the prosecution of the business of a single establishment. Indeed, the answer impliedly admits that whatever is done by the respondents is done by them acting together; but they further aver not on their own account, and only as the employees of a corporation. I think it appears, from the answer and the proofs, that the respondents are acting in concert in the use of the materials and processes which constitute the alleged infringement of the complainant's rights. The fact that, as between themselves, they are connected together as the stockholders, managers, and servants of a corporation, does not exempt them from the restraints of an injunction. This seems in accordance with the view taken by Judge Nelson in the case of Goodyear v. Phelps [Case No. 5,581].

In determining this motion we will consider the "grease patent" first. There seems to be no doubt of its validity, except what may arise out of the suggestion that it is void for want of usefulness. But this has been settled, sufficiently at least for the purposes of this motion. In the case tried before Judge Ingersoll and a jury, the verdict found the patent valid, and in that verdict the judge concurred and issued an injunction restraining the defendants in that case from any use of the invention secured by the "grease patent." In this state of the case, an injunction must issue, if there has been an infringement.

I am satisfied, from a careful examination of the evidence, that the respondents have infringed. It is said, indeed, that the acts of the respondents are not in violation of either patent, because they are mere experiments. I do not think the facts disclosed warrant the conclusion that these were within that class of experiments protected by law. It has been held, and no doubt is now well settled, that an experiment with a patented article for the sole purpose of gratifying a philosophical taste, or curiosity, or for mere amusement, is not an infringement of the rights of the patentee. I do not think, however, that the acts of the respondents come under that head. They are rivals of the complainant in the very business to which his patents relate. They, or most of them, are perfectly familiar with his patents and processes, having formerly been in his employ in manufacturing articles under his patents. The answer alleges that all the defendants have thus far done since the organization of said company, has been done by way of experiment, for the purpose of hereafter working under certain patents, grants, and licenses of their own; of course, these patents, under which they claim to work, are wholly different from those of the complainant; and it can hardly be necessary for the respondents to experiment with the complainant's inventions in order to perfect their own, especially when they are already perfectly familar with the former.

I am of opinion, therefore, that the "grease patent" is valid—that its validity having been judicially settled by a verdict in which the court concurred, it is sufficiently established for the purposes of this motion, as little or no new light has been shed on it thus far in this hearing; and that the respondents have, to some extent, infringed upon the rights of the complainant under it. An injunction must, therefore, issue as to that patent.

But the most important part of this controversy remains to be considered, namely—that which relates to the "tin foil patent." The

original "tin foil patent" was issued to L. Otto P. Meyer April 4, 1854. After having been assigned to the complainant, it was by him surrendered on the ground that it was inoperative by reason of a defective and insufficient specification or description, which errors were alleged to have occurred through inadvertence and mistake, and without any fraudulent intentions; and on August 16, 1859, new letters patent were issued to the complainant.

The respondents resist this motion for a preliminary injunction, so far as this "tin foil patent" is concerned, on three principal grounds, to each of which I shall refer at some length, not for the purpose of definitely settling any questions which more properly belong to another stage of this case, but to avoid misconception as to the ground upon which this motion is disposed of. The three objections urged against the motion are: First. That, on comparing the reissued "tin foil patent" with the original, and reading them both in the light of the obvious facts, and of the history of the previous litigation, it is clearly evident that the reissued patent is not for the same invention as the original, or at least covers more ground than the invention of Meyer. Second. That if this proposition is not clear, from an inspection of the papers, the inquiry involves a question of fact which should go to the jury. Third. That the respondents have not infringed.

I will refer first to the second and third propositions. It is undoubtedly true that the inquiry, whether the reissued patent is for the same invention as the original, involves a question of fact. And if this were a jury trial, that fact would have to be disposed of by the jury. The cases of Battin v. Taggert, 17 How. [58 U. S.] 74, and Carver v. Braintree Manuf'g Co. [Case No. 2,485], cited in support of the claim that this fact in the case now before us should be submitted to the jury, do not, I think, sustain that claim. Those were actions at law, and tried, of course, to the jury. All the controverted facts in each case must or should have been submitted to the jury. But the power or duty of courts of equity to pass upon this, or any other facts that may be put in issue by a bill and answer, is not touched by these cases. If the fact is involved in considerable doubt, that may be a reason why it should be sent to a jury. But so far as I can judge, in the present state of the proofs, I do not think it would be a wise course to send this question to a jury. It is intimately connected with inferences to be drawn from the changes in the specification and claim as presented in the reissue when compared with the original, and the significance of these inferences must depend more or less on the construction to be given to the instrument by the court. I see, therefore, at present no occasion for the intervention of a jury for the purpose of determining the fact of the identity of these inventions, described in the old and new patents. It must be passed upon at final hearing with the other facts in the case, unless it should be left by the proofs in such a state of doubt as ought to lead the court to seek the aid of a verdict.

It is claimed by the complainant that the decision of the commissioner of patents is, if not final and conclusive, at least prima facie evidence that the reissued patent is for the same invention as the original. This is undoubtedly true in all cases where no doubts are raised in the minds of the court by an examination of the instruments themselves, and no fraud is proved. But while in the present case I see no proof of fraud as yet, still, on comparing the new specification with the old one, and with the judicial interpretation given by Judge Ingersoll to the latter, a substantial doubt is raised in my mind as to the question of identity, and especially as to the true construction to be given to the reissued patent. This doubt can only be cleared up by proof, and is, therefore, a proper ground upon which to deny this motion.

On the question whether or not the respondents have infringed the rights which the reissued patent purports to secure, I have no doubt. Whether all the rights it purports to grant are valid, I do not now decide. But if I assumed that the reissued patent was valid to the extent of all it purports to grant, I should have no difficulty, as the evidence now stands, in finding that the respondents had infringed. I make these remarks, as already intimated, to avoid any misconception as to the point upon which the present decision turns. We must look for the true issue. When stripped of all irrelevant matter, it will, I think, be found tolerably simple. The invention of Meyer was a very important one. It may or may not have been fully and accurately described in his first specification. He asserts that it was not, and that, because it was not, the grant to him in his first patent was inoperative to secure to him the fruits of his invention. In the application for the reissue, he claims to have brought out his invention by a more full and accurate description. The invention, as described in the reissue, covers a wider space than that as described in the original. All that lies between the limits fixed by the first, as interpreted by Judge Ingersoll, and those fixed by the second, is now disputed territory; and into that territory, as the evidence now stands, I think it is clear the respondents have entered. The question now is, whether the field which they have thus entered is included within Meyer's invention? Not merely whether it is within the description of his invention contained in the first patent, or within the description of what was intended to be disclaimed in the first patent. But is it a part of his invention? This question I will not now determine; nor do I think it necessary to send it to a jury.

I should also remark here that the respondents deny that they infringe any rights, which even the reissued patent purports to grant, because, they say, they use what Meyer disclaimed in his first patent. They allege that

they pile the sheets and confine them between plates of iron. That they do this, in a certain sense, may be true. That they do it in the sense in which that disclaimer is to be understood, when read in the light of the state of the art at the time of the invention, may be a different question. The argument proceeds upon the idea that nothing can be regarded in the reissue that can be covered by the language of the disclaimer in the original. Without dwelling upon or deciding this question, it may be suggested that inadvertence and error may occur as well in the disclaimer as in the claim, and that whenever the mistake occurs, it may be cured by a reissue. The effect of an erroneous disclaimer upon the right of a patentee to recover damages which accrued before the error was corrected, by a reissue, might be a grave question.

The respondents also insist that they confine their pile between rigid iron plates, and have produced, on the argument, a model of a pile in which the plates are fastened with screw bolts and nuts. I can not regard this model as any part of the evidence in this case. But all that is valuable in Meyer's invention may be placed between iron plates, or any other rigid or flexible material, and still be his. The addition of a useless appendage to a machine, or a useless element to a process, protected by patent, does not defeat the charge of infringement. Indeed, if the argument of the respondents upon this point touching the iron plates, as the evidence now stands, were carried out to its logical conclusion, it would annihilate the Meyer patent. The iron plates would protect them in the use of tin foil, when applied to configurated articles, as well as in the use of any other flexible material applied to plain surfaces; if they add iron plates and pressure, they are within the language of the disclaimer, as they read it, and it is immaterial what substance, or of what thickness that substance is, that they interpose between the sheets of the pile, in this view of the case. I repeat that these remarks relate to the present aspects of this point as it is now presented by the evidence, and the claims of the respondents upon that evidence. What light may be shed upon it hereafter, I, of course, can not now know.

I come now to the most important ground of the defense to this motion, which is, substantially, as I have before stated—"that on comparing the reissued tin foil patent with the original, and reading them both in the light of the obvious facts, and of the history of the previous litigation, it is clearly evident that the reissued patent is not for the same invention as the original, or at least that it covers more ground than Meyer's invention."

Of course, after the intimations I have already made, I shall, in the present stage of this case, neither affirm nor deny this proposition. At the same time, I am of the opinion that the reissued patent, on its face, covers a wider field than any judicial interpretation has given to the original. The controversy now before us is, whether it embraces more than Meyer invented. The extraordinary power of the court is now invoked to restrain the respondent from using what is embraced in this new description, and what was omitted, or imperfectly described in the original. To warrant the exercise of this extraordinary power of the court, in granting a preliminary injunction, the case presented should be free from ambiguity or confusion; especially should this rule be applied to the present case, for whatever difficulty or uncertainty there may be arising out of the difference in the two specifications, it is the fault or misfortune of the complainant (or his assignor the patentee) and not of the respondents, and should be borne by the former and not by the latter. But in denying this motion, it is due to the parties, and especially to the respondents, that I should notice one or two principal objections which they urged against this reissued patent.

The first is that it extends the monopoly of the complainant from tin foil and its equivalent to all kinds of flexible metallic covering. This objection, as I have already intimated, in referring to it in another form, covers, perhaps, the most important ground of this controversy, and its determination should be left till final hearing, when all the evidence bearing upon the state of the art at the time of Meyer's invention, and upon the object and scope of that invention, shall be before the court. It is also insisted that because the new specification is broader in terms than the old one, and more comprehensive than any construction hitherto given to the latter by the courts, it should be declared void. Great stress is laid upon the fact that the last specification gives less prominence to some terms of description, and more to others, than the first one. I discover nothing objectionable in this, provided it is bona fide. The very object of the surrender is always to correct the specification, to make it clearer, fuller, and more exact.

It is objected, too, that the change was made after the complainant had discovered, from the opinion of Judge Ingersoll, that certain processes, or the application of certain processes, to particular forms of material, were not protected by his patent. It matters not. I apprehend, how or when he discovered the mistake, provided it was a mistake, and of that the commissioner of patents has decided in the first instance, and his decision is prima facie evidence of the fact, until the contrary is shown, so far as the good faith of the transaction is concerned. The great question will, after all, I apprehend, be whether or not these processes, or the application of them as described in the new specification, are a part of Meyer's invention. If they are not, then they are not protected by the patent. If they are, I see now no reason why the complainant is not entitled to the benefit of them. The fact that

Meyer was the original and first inventor of the process of applying tin foil and its equivalent to these vulcanizable gums during the process of vulcanization, I regard as well settled, and I have discovered nothing in the affidavits or other evidence, presented on this hearing, which raises a doubt in my mind of the correctness of the verdict of the jury, in the trial before Judge Ingersoll. If I were satisfied that the material, used by the respondents, was either tin foil or its equivalent, in the process or mode of operation, I should grant an injunction, regarding, as I do, the rights of the complainant so far settled by the previous litigation. If the material used by the respondents is not tin foil or its equivalent, then two questions arise, which must be met in final hearing: First. Is the material used by the respondents the pliable, flexible envelope described in the reissued patent? Second. If it is, was it a part of Meyer's invention at the date of his original patent?

These questions I leave for the parties to elucidate hereafter, by such proofs and arguments as they may be able to present. There is one other important point which has been strenuously insisted upon by the respondents, and which I have very carefully considered, without being able to adopt their view of it, and that is substantially—That the invention, as described in the patent of 1854, whether confined to tin foil as the material to be used or not, is limited in its application to embossed, molded, or configurated articles; thus excluding from its protection regular forms and plain surfaces. It is true that irregular forms appear by the specification to have been more prominent in the eye of the inventor than regular ones. In the perfection he was able to give to configurated articles, he evidently saw a difficult, important, and striking result attained by his invention, and naturally described this feature with more fullness than others. But he describes his invention as giving desired forms and shapes and smoothness of surface to the material enveloped in tin foil or its equivalents. He confines himself to no particular forms or shapes. The terms embrace regular as well as irregular figures. A great variety of articles, in the manufacture of which these vulcanized gums are constantly used, are made in both regular and irregular forms, of thick and thin masses, and with plain as well as embossed surfaces; and it is obvious that the invention was one of great utility in producing both styles of articles. The invention is well adapted to give smoothness of surface to any form, and this smoothness of surface is of as much, and often of more, importance on plain sheets or tablets, as on more elaborate forms; and is it to be supposed that, because the inventor has, in his specification, dwelt more fully upon the latter, he intended to exclude the former, when they are within the scope of the general terms by which he has described

his invention? The terms "form" and "shape" embrace the contour of every material object, a smooth sheet or simple tablet, as well as those of elaborate and elegant configuration. The invention that should fix and preserve the forms of the latter must, it would seem, necessarily involve the idea of fixing and preserving the forms of the former, almost as certainly as the greater must always include the less. If a knowledge of the art of giving and preserving the forms and surfaces of smooth sheets or tablets, had preceded the invention of Meyer, it must have been known to those familiar with the state of the art at the time of the trial before Judge Ingersoll, and it is incredible that it should not then have been made known during the entire progress of this litigation.

I have carefully examined the construction given to the original patent by Judge Ingersoll, and I do not think there is any thing in that construction which warrants the claim of the respondents on this point.

The motion for a preliminary injunction under this patent is denied, and the case reserved for final hearing, the proofs to be closed on or before the first day of August next.

[NOTE. At the final hearing a perpetual injunction was allowed upon both patents. Case No. 11,280. For other cases involving these patents, see note to Poppenhusen v. New York Gutta Percha Comb Co., Id. 11,283.]