## Case No. 147.

ALBRIGHT v. CELLULOID HARNESS-TRIMMING CO.

SAME v. SAME.

[2 Ban. & A. 629; 12 O. G. 227; Merw. Pat. Inv. 254.][1]

Circuit Court, D. New Jersey. June, 1877.

PATENTS FOR INVENTIONS — REISSUE — ANTICIPATION—INFRINGEMENT—EXPERIMENTAL USER.

1. It is not necessary that a reissue should embrace everything found in the original, since the prohibition of the act is limited to the adding of new matter to the specifications.

2. There is no obligation upon the patentee to claim all things in the reissue which were claimed in the original invention.

3. On the question of originality, mere experiments never put to practical use, are not anticipations.

[See Aiken v. Dolan, Case No. 110.]

4. He is the first inventor and entitled to the patent, who, being an original discoverer, has first perfected and adapted the invention to actual use.

5. An experimental making and user of a patented article is a technical infringement.

6. Reissued letters patent No. 5,155, granted to complainant, November 26th, 1872, for improvement in dies for finishing rubber-coated harness mountings, held valid.

In equity.

J. C. Clayton, for complainant.

A. S. Hubbell, for defendants.

NIXON, District Judge. There are several suits pending between these parties, and I will first consider the case which was denominated "No. 1" on the argument, and which has been brought against the defendant corporation for infringing certain letters patent, numbered 5,155, for "improvement in the manufacture of rubber-coated harness-trimmings," being a reissue to the complainant, of the date of November 26th, 1872, the original patent having been granted February 13th, 1872, and antedated January 27th, 1872.[2] The only claim of the reissue is for the dies, a tool adapted to do a particular work, and the complainant states in his schedule to the reissue, that his invention consists in making and using a pair of dies for pressing, finishing, polishing and trimming the edges of the vulcanized coating of harness-trimmings, such as rings, buckles, terrets, hooks and like

[1][Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission. Partially reported in Merw. Pat. Inv. 254.]

[2][See note at end of case.]

articles. The answer of the defendant substantially denies the infringement, and that the complainant was the original and first inventor of the dies described in the reissue, or any material part thereof, alleging that the same was used by a number of persons, whose names and places of business are set forth. It further alleges that the thing patented had been described in printed publications prior to complainant's alleged discovery or invention, and more particularly in a number of English and American patents therein enumerated; that the same had been in public use, or on sale, in this country for more than two years before the complainant made application for his original letters patent; and, also, that the reissue was not for the same invention as was fully described in the original patent. Such grounds of defence necessarily involve the construction of complainant's invention; and in order to construe it intelligently, we must first examine the original patent, including the specifications, drawings, etc., and ascertain, if we can, what the patentee discloses and claims therein to be his invention; then look at the reissue to see whether any other or different invention is set up; and next consider the state of the art at the date of the patent to learn from thence what the patentee is entitled to claim as his own.

The case, as prepared and ably argued by the counsel, covers a very extensive field of investigation, and, having given to it the care and attention which its importance to the parties seems to demand, we shall proceed to briefly state our conclusions, rather than the processes of reasoning by which they have been reached. In the specifications of the patent, the patentee states, that his invention consists of making a pair of dies for pressing, polishing and trimming the edges of the rubber coating of harness-trimmings, so as to imitate stitching, and to finish each article without hand-labor. In other words, he proposes with an instrument or tool to do an old thing in a new and better way. He was not the first to use dies in the manufacture of rings, buckles, terrets or other harness-mountings, nor the first to imitate leather stitching on rubber-coated articles, nor the first to densify and polish with dies plastic compositions, surrounding a metal core, by heat and pressure. Numerous English and American patents—as, notably, the patent to Thomas Deakin, December 22d, 1842, for the use of metallic dies to receive the metal skeleton; the English patent to Newton, September 4th, 1851, and to Moses Poole, March 28th, 1853, for the Goodyear invention of applying india-rubber compositions in making and finishing parts of harness; the patent to William Green, August 6th, 1857, in regard to imitation stitching; and the American patent to Welling, dated April 28th, 1862, for pressing and solidifying the mass of any plastic composition around an iron ring by means of dies—reveal methods of separately accomplishing those different results.

The operation of the invention is simple. A metal ring, buckle or other article is coated with the rubber and placed in one of the dies, and the other die is pressed down upon it. The dies, or the article itself. are moderately heated, so that the pressure of the polished dies will polish or finish the article. The dies are beveled off at a and c of Fig. 2 of the drawings, so as to form sharp edges. These edges a cut off the waste at the inner side of the ring, while the edges c cut off the waste on the outer side. In this way the act of pressing together the dies polishes, trims and finishes each article in the best and quickest manner. e shows the indented lines, which produce an imitation of stitches. The dies touch each other. x, y, and z, so that they cannot crush the article placed in them. The claim of the patent in the original is for—"The construction and operation of the dies A and B with cutting-edges a and c, substantially as described, for finishing rubber-coated harness-mountings."

On the 26th of November, 1872, the patent was reissued in two divisions, as is expressly authorized by section 4916 of the Revised Statutes. Of these Division A, numbered 5,155, was for the dies, and Division B, numbered 5,156, for the process of manufacturing metallic harness-trimmings covered with rubber or other known vulcanizable gum. Suit No. 1 was brought for infringement of the reissue No. 5,155. A comparison of the specifications, drawings and claims fails to show that any new matter has been introduced into the reissue which did not appear in the original patent. It is true that Division A does not embrace everything which is found in the original; but it is not necessary that it should, since the prohibition of the act is limited to the adding of new matter to the specifications, and there is no obligation upon the patentee to claim all things in the reissue which were claimed in the original invention. Carver v. Braintree Manuf'g Co., [Case No. 2,485.] Of what, then, does the invention consist as described in the reissue? We have a die in two parts, so constructed as to press, solidify, polish and trim the edges of a partially made ring with an iron core, and to impart to it by a single operation the desired form, rib and imitation stitch, and at the same time separating the waste material from the article. It embodies the following features: (1) A central cavity for the body of the article to be formed; (2) a recess surrounding the cavity in which to form a projecting rib adapted to receive ornamentation; (3) provision, by grooves, for the escape of the surplus material; (4) cutting or defining edges to separate the surplus material on the inner and outer edges of the article; (5) concentric recesses to receive the waste; and (6) bearing-surfaces to determine the thickness of

the finished article. and to prevent crushing the same. Whether this is a new device or not, does not depend upon the question whether the separate instrumentalities are new, but rather upon the question whether any new and useful result is produced by their combination. The evidence seems to be, that the complainant, who is also the patentee, has been able, by the use of this die, to bring upon the market a better article of rubber-coated harness-trimming, with less labor and expense, than had before been produced. Before its introduction, the workmen were in the habit of placing the soft rubber around the metal core, and, as a preliminary step, of putting it through the process of vulcanization, after which the article was trimmed, polished and finished by hand, and the stitches marked thereon with the sharp-pointed wheel. These separate and laborious methods have been superseded by the complainant's invention. Not much time need be spent upon the inquiry whether the defendant corporation has infringed.

At complainant's request they produced a pair of finishing-dies, such as they used in the manufacture of celluloid-coated harness trimmings, and the same has been marked complainant's Exhibit No. 12. Complainant's Exhibit No. 7 was put in to show the die described and claimed in reissue No. 5,155, and the question is whether the use of the former is an infringement of the characteristic devices of the latter. Their features of resemblance are more numerous than their features of dissimilarity. Even where they are not identical in form, they seem to be so in function. For instance, the sharp cutting-edges described and appearing in Exhibit No. 7, are not described and do not appear in Exhibit No. 12. Their absence, and the substitution in their place by the defendants of the broad bearing-surfaces, was largely commented upon by their counsel on the argument, and it was assumed that such a change effected a substantial difference in the mode of operation of the two dies; but actual experiments shown do not sustain the assumption. It was found that the dividing-ridge in Exhibit 12—the defendant's die—through bearing-surfaces, acted also as cut-offs of the surplus material, and produced substantially the same result at the sharper cutting-edges of Exhibit 7—the complainant's die. A thicker fin was ordinarily left on the outer rim of the article pressed in the one case than in the other, and where a coating material was used less dense than the hard rubber, such as celluloid, it seems that the broad bearing-surface insured a better finish than the cutting-edges, by holding more of the material within the dies for solidification and polish; but the construction and mode of operation of the two dies are so substantially alike that the use of Exhibit No. 12 must be held to be an infringement of Exhibit No. 7.

Nothing was brought forward in the case which casts serious doubts upon the originality of the complainant's patent, except the Sturgis die, Exhibit No. 18, produced by the complainant. Mr. Sturgis says that, in the spring or summer of 1865, he made a pair of dies to press up a composition with which he wished to coat an iron buckle to imitate the stitched leather buckle. He pressed up different compositions, experimenting with leather and paper and cloth. He never made any quantity, or ever put any on the market, "being a mere matter of experimenting." It does not appear that these experiments were successful, as he testifies that he abandoned them and laid the dies away upon the shelf in his shop, where they remained until they were brought out for the purpose of defence in this case. He did not perfect or adopt his invention, if he made one, to successful use. His dies were first made as molds or stuffing-boxes, with holes. at the back, through which he forced the composition around the iron frame previously placed in the die. That mode did not work successfully, as the tendency was for the composition to force the iron frame out of place. He then closed up the openings with solder, and, instead of forcing in the composition, he placed it above and below the iron frame before the die was closed. He experimented alone about a couple of months, and pressed up, with these different materials, probably a half-gross of buckles. He fails everywhere in his testimony to indicate that he regarded his device, whether used as a stuffing-box or a die, as. of any practical value, and he ceased for years all efforts to make it successful. Under these circumstances what he did must be put in the category of abandoned experiments. "He is the first inventor," says. the supreme court in Whiteley v. Swayne, 7 Wall. [74 U. S.] 685, "and entitled to the patent, who, being an original discoverer, has first perfected and adapted the invention to actual use." Gayler v. Wilder, 10 How. [51 U. S.] 477; Washburn v. Gould, [Case No. 17,214;] Parham v. American Button Hole, etc., Co., [Id. 10,713;] The Corn-Planter Patent, 23 Wall. [90 U. S.] 181. Let a decree be entered in case No. 1 for an injunction and account, according to the prayer of the bill of complaint.

It is not necessary to make any extended reference to case No. 2. The suit is brought for the infringement of letters patent No. 137,873, issued to the complainant April 15,. 1873, for "improvements in the manufacture of rubber-coated harness-trimmings." The patentee says in the specification that the nature of his invention consists in the formation of a die constructed of two or more pieces for stamping and finishing harness or carriage trimmings. when a metallic body is covered with suitably prepared rubber or other equivalent substances, without having any refuse or surplus material in the die when the process is done, and he alleges.

that it is an improvement on the patent issued to him February 13th, 1872, and reissued in two divisions, November 26th, 1872. His claim is for "the die A B, constructed substantially as described, for pressing and finishing composition-coated harness or carriage trimmings without leaving any refuse material in them, as set forth." The improvement, therefore, consists in a die that finishes and polishes the coated article with no provision for waste or surplus material. Have the defendants infringed by making or using such a die? They admit in their answer that subsequent to the date of the said letters patent No. 137,873, among other experiments made or caused to be made at their factory in Newark, in the course of perfecting their manufacture of harness-trimmings coated with celluloid, they tried dies of substantially the form and construction, and having the same operation described in said letters patent; but such use was only experimental, and the said experiments demonstrated the fact that harness-trimmings coated with celluloid cannot be manufactured in dies thus constructed, and that they accordingly abandoned the experiment.

It should be said, in justice to the candor and frankness of the defendant corporation, that this admission on their part is quite as full as the complainant's proofs. Their superintendent, Lockwood, says that prior to July, 1874, he saw in their factory a die similar to Exhibit No. 8, which it is admitted was constructed according to the patent under consideration, and the complainant, Albright, testified that he visited the defendants' rooms in Newark, in October or November, 1873, and saw there one large oval brace-buckle die and one or two ring-dies constructed on the plan of Exhibit No. 8, and also buckles and rings, which, from their general appearance, he believed had been pressed in these dies. That seems to be the extent of the testimony as to the making and using the dies. It is a technical infringement, and is sufficient to authorize an injunction restraining their future use; but no reference will be ordered, as no damage or profits have been shown or suggested.

[NOTE. Patent No. 137,873 was granted April 15, 1873, and, so far as ascertained, was not involved in any reported cases, other than the above prior to 1880. Patent No. 123,603 was granted February 13, 1872, to A. Albright, and was referred to in Albright v. Teas, 23 O. G. 829. This patent was reissued November 26, 1872, No. 5,155.]