CIMIOTTI UNHAIRING CO. et al. v. DERBOKLOW.

(Circuit Court, E. D. New York. June 27, 1898.)

1. PATENTS—INFRINGEMENT—EXPERIMENTATION.

One who used two infringing machines for dehairing pelts for nearly three years cannot escape liability on the ground that he was merely experimenting to see if he could discover improvements on the machines, especially where it appears that the pelts operated upon were not his own, but those of his customers, given to him to dehair in the ordinary course of business.

2. SAME—MACHINES FOR PLUCKING PELTS.

The Sutton patent, No. 536,742, for a machine for plucking pelts, construed, and held valid and infringed.

Hearing upon pleadings and proofs of bill in equity to restrain infringement of claims 1 and 3 of United States patent No. 536,742, issued April 2, 1895, to complainant John W. Sutton for a machine for plucking pelts. The complainant the Cimiotti Unhairing Company is the exclusive licensee in the United States under said patent.

Goepel & Raegener, for complainants.

York & York, for defendant.

LACOMBE, Circuit Judge. In preparing fur skins for the market it is necessary to remove certain stiff hairs (known as "water hairs"), which project up through the softer fur. Originally these were removed by hand, the fur being parted by blowing upon it, and the water hair appearing in the "part" being snipped off with a pair of scissors. Subsequently machines were devised to do this work, including one invented by Sutton (United States patent No. 383,258, May 28, 1888). The patent in suit is for an improvement on this last-named patent. A description sufficient for the purposes of this suit will be found in the following excerpt from the later patent:

"The invention consists of a machine for removing the water hairs from pelts of all kinds, which comprises a fixed stretcher bar, means for stretching and intermittently feeding a pelt over said stretcher bar, a rotary brush located above the stretcher bar and near the edge of the same, a reciprocating guard comb below the stretcher bar, a rotary separating brush likewise below the stretcher bar, mechanism for moving the said brush and guard comb into a position in upward and forward direction towards the edge of the stretcher bar and over the portion of the pelt below the same, a vertically reciprocating knife, a rotary knife arranged to cut off the projecting water hairs in

conjunction with the vertically reciprocating knife, and a card arranged on the arm of the rotary knife at some distance from the same, so as to pass over the portion of the pelt in position on the stretcher bar."

This description includes the original machine as well as the improvement. The improvement which is covered by the patent in suit, and on which alone infringement is charged, consists in the rotary brush above the stretcher bar. The specification says:

"As compared to my prior patent before mentioned, the novel and important feature of the present construction is the substitution for the stationary card above the stretcher bar of a rotary brush which is placed close to the edge of the stretcher bar, and which serves to brush the fur back from the edge of the bar while it allows the stiff hairs to rise and project above the fur. When the card, which was supported back of the rotary knife in my prior machine, passed the edge of the stretcher bar, it drew out from under the stationary card all the fur and hair on that section of the pelt that were on the edge of the bar. Some of the fur, however, was only partly drawn out, owing to the varying thicknesses of the pelts. This partly drawn out fur lay in the form of a loop, which stood out far enough to be reached by the knives, but not far enough to be reached by the rotary brush below the stretcher bar, and so was cut off by the knives. With the rotary brush in place of the stationary card heretofore used by me, this looped fur is drawn back and laid down before the knives reach it, so that the cutting of the fur is prevented, and only the stiff hairs are removed."

This is a concise and intelligible description. It shows clearly just what it was which Sutton devised to remedy the defect of his earlier machine. It can readily be understood that his device was efficient, and unless it is anticipated in earlier patents, or some prior use is shown, the claims embodying such improvement would seem to be valid. The claims in suit are:

"(1) The combination of a stretcher bar, means for intermittently feeding a pelt over the stretcher bar in one direction, a rotary brush located near the edge of the stretcher bar and in contact with that portion of the pelt moving towards the edge of the stretcher bar, means for continuously rotating said brush reversely to the direction of the movement of the pelt, and means for removing the hairs projecting from the pelt in front of the working edge of the stretcher bar, after the brush has operated on the pelt, substantially as set forth." "(3) The combination of a stretcher bar, means for intermittently feeding a pelt over the stretcher bar in one direction, a rotary brush located near the edge of the stretcher bar and in contact with that portion of the pelt moving towards the edge of the stretcher bar, means for continuously rotating said brush reversely to the direction of movement of the pelt, a rotary separating brush below the stretcher bar, and a mechanism by which the separating brush is moved upward and forward into a position close to the working edge of the stretcher bar, substantially as set forth."

It will be observed that a "parting" of the fur is effected by the operation of two devices, one on each side of the line over which the pelt passes in its progress under the cutting devices. One of these parting devices is located beyond such line, and in complainant's patent is a rotary brush revolving so as to brush the hairs in the same direction in which the pelt is moving. This may be called the "lower parting device." The other, which may be called the "upper parting device," is located just short of the line where the cutting devices operate. In the complainant's patent, also, is a rotary brush, which revolves, however, so as to brush the hairs in a direction contrary to that in which the pelt is moving.

The answer sets up a United States patent to defendant (No. 483,-142, September 27, 1892), which has been put in proof. It also rather indistinctly refers to a United States patent to one Anton Hedbavny, in the year 1888, of which the record contains no trace. In the patent to defendant (483,142) the "lower parting device" is a so-called "wiper," which is a hollow sleeve or tube, with hollow vanes held in such tube or sleeve, and communicating with the interior thereof, the vanes being formed with perforations. Steam is driven through the "wiper," dampening the fur, and as the vanes run lengthwise the revolving tube, and therefore across the moving pelt, their faces press down the dampened fur. The revolution of the "wiper" is such as to press or "wipe" down the fur in the direction of the forward movement of the pelt. In the same patent the "upper parting device" is the guard or comb, G, which, motionless itself, serves to retard the fur as the pelt is moved along between the guard or comb and the stretcher bar. This certainly is no anticipation of complainant's upper rotary brush. Indeed, as his specification points out, the brush was devised to correct defects of operation which were found to exist when a comb or guard was used.

Two other United States patents have been put in evidence. Not being pleaded, they could not be availed of as anticipations, but they contain nothing material. In the one to Anton Hedbavny (No. 408,879, August 13, 1889) the "upper parting device" is the guard comb, C, which serves to retain the soft hair or wool of the pelt before the same passes over the edge of the transverse bar (stretcher bar). In the one to H. W. Covert (No. 304,992, September 9, 1884) the "upper parting device" is the cutting blade or shear, C, the cutting edge resting permanently on the fur for the purpose of holding it down in its natural position.

About a month after the patent to complainant was issued defendant filed a caveat for a skin-dehairing machine, which shows the two rotary brushes revolving in opposite directions, as shown and claimed in complainant's patent. The evidence by which defendant sought to carry his use of this device back to January 1, 1894, is conflicting, and not particularly persuasive; while evidence quite as satisfactory carried back the date of Sutton's invention to the early part of 1893. There is evidence showing utility and acceptance by the trade. The patent is therefore sustained as to the claims in suit.

The use of two infringing machines is hardly denied. Defendant admits that for nearly three years he has been using machines for dehairing pelts which contain the combination of brushes shown in his caveat, which is substantially the combination of the patent. It is sought to excuse this use of infringing devices on the theory that defendant was "experimenting" with the machines in order to see if he could not discover some improvement. But his experiments consisted in running pelts through the machines. Apparently he had no pelts of his own, and has used those of his customers, which he was given to dehair, in the ordinary course of business. This is not fairly within any legitimate use for experimental purposes only. Poppenhusen v. Falke (1861) 2 Fish. Pat. Cas. 181, Fed. Cas. No.

11,279; Albright v. Trimming Co., 2 Ban. & A. 629, Fed. Cas. No. 147.

Complainants may take the usual decree for injunction and accounting.