## WESTERN TUBE CO. v. RAINEAR.

### (Circuit Court, E. D. Pennsylvania. August 8, 1907.)

1. PATENTS—INVENTION—SUBSTITUTION OF MATERIALS.

While the substitution of one material for another is not as a rule patentable, there may be invention in substituting a different metal in one member of a device where both were previously made of the same, when by the union of the two metals certain hitherto imperfectly attained results are accomplished.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 23.]

2. SAME—ANTICIPATION—CHANCE COMBINATION.

Prior knowledge and use which will anticipate a later patent is not to be made out by a chance combination made without appreciation of the principle upon which the patent is based.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 70.]

3. SAME—INFRINGEMENT.

The splitting up or multiplication of parts of a patented device without any new function or result does not avoid infringement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 378.]

4. SAME—PIPE COUPLING.

The Hewlett patent, No. 640,197, for a pipe coupling, which consists essentially in the combination in a pipe coupling of ordinary construction of a brass spud and an iron nut and tailpiece, whereby there is brass to iron at the screw joint and at the opposing ends of tailpiece and spud, thereby avoiding the rusting of the joint and securing a closer union of such opposing ends, was not anticipated and discloses invention; also *held* infringed.

In Equity. Bill in equity to restrain the infringement of letters patent issued to Alfred M. Hewlett of Kewanee, Ill., January 2, 1900, for a pipe coupling.

On final hearing.

Thomas W. Bakewell and Charles MacVeagh, for complainant.
Philip C. Dyrenforth, for defendant.

156 F.—4

ARCHBALD, District Judge.[1]  The patent in suit is for a pipe coupling, to join together the ends of steam, water, or other similar pipes, the connections of which have to be frequently detached or broken.  It is made up of the usual three parts or members, consisting of two end pieces, familiarly known as the "spud" and the "tailpiece," which are brought together to form the connection by a coupling ring, nut, or collar; the ring and the tailpiece being provided, respectively, with an opposing flange and shoulder, and the ring and spud having appropriate exterior and interior screw-threads, which fit each other.  According to the common construction of such couplings, all the members, indiscriminately, are made of the same material, and when this is iron or steel the several parts are liable to become so fastened together by rust, as to be very difficult to uncouple, the act of uncoupling also frequently causing injury, so that, when put together again, the joint is not tight.  To make it tight and prevent leakage, a gasket is also frequently necessary between the abutting ends of the pipe, within the coupling ring, and this, in turn, gathers rust and destroys the efficiency of the union.  If the coupling ends are of brass instead of iron, while this avoids the rusting, either a gasket has still to be used, or the abutting ends have to be carefully ground to a fit, which may operate well enough to form a water or steam tight connection at first, but upon repeated screwing and unscrewing, the ends are liable to be worn unevenly, and the tightness of the joint be affected accordingly.  All this is set forth in the patent, and the object of the invention is to meet and remedy it.  This is accomplished by having the nut or ring and the one coupling-end or tailpiece of a relatively hard material, such as wrought iron or steel, and the other coupling-end or spud of a relatively softer and substantially non-oxidizable metal, such as brass, tin, copper, bronze, aluminum, and the like, brass being usually selected, and the opposing surfaces where the coupling ends come together being preferably beveled, the action of the harder metal on the softer, when they are brought to bear against each other, by the screwing up of the nut or ring, causing them to grind, one on the other, and make a tight joint.  By this adaptation of the different materials employed, not only is the coupling easily loosened and detached, the ring being readily unscrewed by reason of the spud being of brass and there being in consequence no rusting of the screw-threads, but, for the same reason, the opposing ends of spud and tailpiece not only

The Hewlett Coupling.

Brass.

Iron.

[1] Specially assigned.

drop apart when the coupling is unscrewed, but bind upon each other and bear closely together when it is screwed up, without their having to be machine finished or supplied with a washer or gasket, and without their becoming pitted or eaten with rust. The invention thus consists primarily in the selection of certain materials for certain parts; no other arrangement yielding the same results. Its utility is shown by its complete commercial success, it having virtually supplanted all other similar previous devices, of which there have been not a few, and that, too, with customers who are little influenced by anything except real merit, such as engine works and railroads.

There are three claims to the patent, all of which are relied on, as follows:

"1. In a pipe-coupling, the combination with a member made of relatively hard material and constructed for attachment to the end of a pipe, said member being provided with an integral bearing-surface, of a second coupling member composed of relatively softer and substantially non-oxidizable metal and having formed integrally therewith a bearing-surface arranged to bear against the bearing-surface of the member formed of harder metal, and a coupling-ring also formed of relatively hard metal and detachably connected to the member of softer metal, said ring operating when rotated to bring the bearing-surfaces of the two members into close contact, substantially as described.

"2. In a pipe-coupling, the combination of a member constructed to be secured to the end of a pipe and composed of a relatively hard material, said member being formed with a bearing-surface and a circumferential, external shoulder, a coupling-ring also composed of relatively hard metal and provided with a shoulder arranged to bear on the shoulder of said member, and a second member composed of relatively softer and practically non-oxidizable material constructed to be screwed into said coupling-ring and having a bearing-surface formed integrally therewith, said ring when rotated operating to draw the said bearing-surfaces into close contact, substantially as described.

"3. In a pipe-coupling, the combination with a coupling member of relatively hard material and constructed for attachment to the end of a pipe, said member being provided with an integral bearing-surface, of a coupling-ring rotatably arranged on said coupling member, said ring being also composed of a relatively hard material and interiorly screw-threaded, and a second coupling member of relatively softer and substantially non-oxidizable material and externally screw-threaded to engage the internal screw-threads of the coupling-ring, said softer member being provided with a bearing-surface arranged to closely bear against the bearing-surface on the harder member when the coupling-ring is screwed up, substantially as described."

Stripped of verbiage, the invention as so specified may be said to consist in the combination, in a pipe coupling of ordinary construction, of a brass spud and an iron nut and tailpiece, whereby there is brass to iron at the screw joint, and iron to brass at the opposing ends of tailpiece and spud. The defendant denies that there is anything patentable or novel in this, or that he infringes upon it, if there is, and these, therefore, are the questions to be disposed of.

That there is no patentable invention in the device is maintained upon the ground that it consists in the mere substitution or interchange of materials, the principle made use of, that iron in contact with brass will not rust, being old and well-known, as it is said, and having been constantly employed for the same purpose, in similar joints and couplings, for a long period. No doubt the mere substitution of one material for another is not, as a rule, patentable. Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683; Hicks v. Kelsey,

18 Wall. 670, 21 L. Ed. 852; Brown v. District of Columbia, 130 U. S. 87, 9 Sup. Ct. 437, 32 L. Ed. 863. But there is something more than that here; the contiguous materials for the different members of the coupling being selected and arranged because of their ability to accomplish certain useful and hitherto imperfectly attained results. It may seem a small thing, involving no great ingenuity, in an ordinary pipe coupling to merely make the spud of brass, leaving the other parts unchanged; but, considering the efforts of others in the same direction, and the various expedients resorted to, to obtain an easily detachable, and at the same time a steam and water tight joint, the simplicity of the device confirms rather than detracts from the invention, something more than ordinary mechanical skill being required to go so directly to the mark. Nor is it of any consequence that the well-known principle is made use of, that iron against brass will not rust. It is not necessary, in order to make out invention, that new qualities shall be evolved. It is sufficient if old ones are novelly

The Paynter Coupling.

Everything but the Gasket is Iron.

and inventively applied. The case in this respect is clearly within the decision of Judge Butler in Paynter v. Devlin (C. C.) 63 Fed. 122, affirmed by the Court of Appeals of this circuit in 64 Fed. 398, 12 C. C. A. 188. The patent there as here was for a pipe union, the device consisting simply in having the head and tailpieces with concave and convex interfitting surfaces, respectively, and providing the former with an inserted seat of soft metal, such as lead, against which the end of the tailpiece should abut and bind. The ingenuity so displayed was certainly no greater than in the present instance, and it was sustained.

There are a number of devices, patented and unpatented, which are relied on to negative the novelty of the one in suit. The Dart (1890)

The Dart Coupling.

coupling is not perhaps insisted on as one of these, although the patent at first was rejected on the strength of it; but, as one of the best of previous contrivances, it will not be out of the way to refer to it. The three principal members of this coupling were all of the same material—iron or steel—but at the meeting or seat ends of the head and tailpiece soft metal bushings of brass were screwed into each end, having concave and convex surfaces, respectively, which bore against each other forming the union. When new, this arrangement no doubt makes a close joint; but the objection to it is that, as brass under heat expands faster than iron, by being successively expanded and contracted when

used with steam, the brass seats become loose and leak. Except so far as the head and tailpieces are made to fit into each other—which is really no part of the present invention—there is no correspondence in this with the device in suit. Not only does brass bear upon brass, instead of brass upon iron, at the meeting surface of the two ends, but the screw-thread connection between ring and headpiece is iron to iron, which inevitably rusts, with all the attendant disadvantages; and it also takes five different parts to make up the union, instead of three. The distinctions are obvious and nothing more need be said.

The Murdock Hydrant Bottom.

In the Murdock hydrant-bottom (1895) however, as it is claimed, there is a combination closely approximating the one in suit. This is a device for connecting hydrants and lines of water pipe, the hydrant bottom consisting of an elbow, a tailpiece, and a coupling-ring; the tailpiece in practice being made of brass and the other parts of iron, the ends of the elbow and tailpiece being also beveled to fit together. By this arrangement, an iron to brass contact was secured at the meeting ends of bottom and tailpiece, the avowed object of which was to avoid rust, as well as to get a tight joint by the harder metal bearing on the softer. But the ring and elbow were both of iron, and the screw connection between the two was bound to rust, thus differing materially from what we have here. A modification of this was introduced by Nichol, manufacturing under the same patent, by which, at first, on account of delay in getting iron castings, all the parts were made of brass, but later the bottom or elbow was made of iron, the other two parts remaining unchanged, an iron nut, however, at times being also used. Nichol thus put out four different combinations, an iron nut with an iron elbow, an iron nut with a brass elbow, a brass nut with an iron elbow, and a brass nut with a brass elbow; the tailpiece in each case being of brass. In none of these is the precise arrangement of the present patent realized, although with a brass nut, an iron elbow, and a brass tailpiece there is an iron to brass contact at the meeting ends as well as at the screw joint, avoiding rust and making the same character of union, as here, at both. This is only brought about, however, by a decided increase in the amount of brass used, there

The Nichol Hydrant Bottom.

being two members of that material which, if adopted in the device in suit, would add some 40 per cent. to the cost and be practically prohibitive, the same advantages being secured as the case stands by having the screw-thread and the bearing surface of one and the same piece of brass, and the inventive idea consisting in seeing that this could be done. It is to be noted, moreover, that the Nichol-Murdock combination, which is relied upon, was somewhat a matter of accident, influenced by expediency rather than design; the only thing that can be said to the contrary being that the desirability of avoiding rust at the screw joint was appreciated and a brass nut apparently preferred on that account.

The Ingersoll-Sergeant Hose coupling for steam drills in its original form, came the nearest of any to being an anticipation, having an iron nut, an iron tailpiece,

**Ingersoll-Sergeant Hose Coupling.**

and a brass spud, the exact combination, changing spud and tailpiece, which is found here. But the full possibilities of this were not appreciated, and the spud in consequence was not made to contact with the tailpiece, the screw-threads being only carried to a certain point, and a space purposely left between the two ends for the insertion of a washer or gasket, assumed to be necessary. Nor was this relative arrangement of material persisted in. Being designed for use in mines and quarries, the iron nuts got broken by rough handling, and brass nuts, as more durable, were substituted, the spud being changed at the same time to iron, thus abandoning the whole resemblance. While, then, the desirability of having an iron-to-brass contact at the screw joint was no doubt appreciated and taken advantage of, in making up this coupling, so much so that when the nut was changed from one metal to the other, vice versa, the spud was also; yet the effect of having the meeting ends different, and allowing the harder metal of the one to bear upon the softer metal of the other making a tight joint at all times, was entirely lost sight of, stopping short by just so much of realizing the device in hand.

The Giffard-Sellers-Kneass steam injectors, which are also referred to, stand no differently or better than the rest. In these there is an iron arm or branch, coupled to a brass tailpiece by a brass nut, which, no doubt, gives brass to iron at the meeting faces of the coupling ends, as well as at the screw-thread connection. But, as in the case of the Nichol-Murdock hydrant-bottom, this is accomplished at the expense of a brass nut in addition to a brass tailpiece, or in other words, with

two members of brass, where one would have done, the economy of metal being material.

Nor is anything more to be made out of the several Moran devices if indeed so much, their sole relevancy consisting in showing, in some of their forms, a brass to iron contact between the members. The oil filler joint was the first of these; the whisky filler and the steam joint being developed from it. It consisted of a dome or bell, fitting down upon a hollow ball or sphere, the two being united and held together by a cap or ring fitting around and screwing over the point of union, making a flexible ball and socket joint with two extended arms. As originally constructed, all the parts were of brass, but, this being expensive, they were subsequently made of iron, after which, there being parts of each material in stock, they were put together somewhat indiscriminately, particularly when certain parts were renewed or old ones sent in for repair, with the result at times that a brass bell and an iron ball, with an iron cap or ring, would be brought together, thus realizing the arrangement of material found in the patent. But, even if the mechanical structure of this device

**The Moran Flexible Oil-Filler.**

were nearer than it is, the normal arrangement was all brass or all iron, and such a haphazard assemblage of material, varying from this, as is now relied upon, is of no practical significance here. The advantage of an iron to brass contact, which was thus secured, was not appreciated, nor was anything useful deduced from it or contributed to the art. The chance combination is simply seized upon to meet the exigencies of the present case, in the hope that it may do duty as an anticipation. Prior knowledge and use negativing novelty is not, however, to be made out in any such way. Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279; Ajax Metal Co. v. Brady Brass Co., 155 Fed. 409. The whisky filler and steam joint evolved from this were of a slightly different structure; the ball and socket being made to fit closely, so as to be steam and water tight; the whisky filler being all brass, except as the ring, which did not come in contact with the liquor, was sometimes for economy made of iron; and the steam joint being all of one material. But, as is evident from this description, they are neither of them of any relevancy here. And the same is true of the automatic steam drip, by the same inventor, which is apparently referred to simply to show that the advantage of an iron to brass contact to avoid rust

was well known, of which there is already abundant evidence in this record and which no one will deny.

From this review, therefore, it will be seen that the want of novelty which is charged has not been made out. Not only is not the precise combination of materials shown, except here and there by accident, which is of no account; but there is nothing upon which the device in suit is not a substantially inventive advance. It may be that the benefit of an iron to brass contact which is made use of, as well as the effect of iron bearing upon brass to make a tight joint, was known. But in the way that both principles are employed, at one and the same time, to accomplish beneficial results, with economy of material and of parts, the device stands unanticipated and alone, and must be sustained. It is possible that representations were made in argument before the examiner, which went beyond the real state of the art as so found, without which the patent would not have been allowed. But that is past, and its validity is to be determined, not by what the examiner may have thought of it, if otherwise informed, but by what is disclosed with regard to it here. Nor would that seem to affect the presumption in favor of the patent, if that were material, as it is not.

The question of infringement remains, in which connection it may be observed that there is nothing in the file wrapper to limit the invention as specified and claimed in the patent, and it is therefore to be taken as it is there set forth. It may have been cut down in its course through the Patent Office from its original form. Most inventions are. But nothing is put forward now which was rejected then, which is all with which we are concerned. The device sold by the defendant is manufactured under the Dart (1902) patent not the one spoken of above but a later one, which is also subsequent to the one in suit.

The Defendant's Pipe Coupling.

pin

But, aside from the presumption of legality which this may give (Miller v. Eagle Mfg. Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121), it is of no consequence if infringement actually appears. The general structure of the coupling is the same as that of the complainants, and there is the same relative arrangement of materials and of parts, there being an iron nut, and an iron tailpiece, but the spud, instead of being of brass, is also of iron, an iron to brass contact at the screw joint, as well as at the pipe ends, being secured by means of a brass ring or bushing screwed onto the end of the spud, giving it a brass face, and being further held in place by means of a pin. But the splitting up or multiplication of parts in this way, without any new function or result, does not avoid infringement, if it is otherwise made out (Eck.

v. Kutz [C. C.] 132 Fed. 758), and that is the case here, at least as
to the third claim. It is contended that, by making this facing ring
or bushing of brass, there is economy of material, even greater than in
the complainants' device, upon which, if it is allowed as an element in
maintaining the invention, the defendant is equally entitled to rely.
But economy of material is not all, although it, of course, plays a part.
the full inventive idea, as already stated, consisting in perceiving that
an iron to brass contact could be secured at the screw-thread connec-
tion, as well as at the face ends, by one and the same piece of brass,
economizing not only in material, but in number of parts. With re-
gard to the first and second claims, however, the case is not so clear.
Apparently for the purpose of differentiating the Paynter as well as
the first Dart, in each of which a bushing is employed at the face as
a distinct part, the inventor in these claims specifically declares for a
second coupling member composed of a relatively softer and non-
oxidizable metal, having a bearing surface formed integrally therewith.
There may be a particularity of description here, which was unnec-
essary, to which—the invention at the best being a narrow one—the
complainants should be held down. And there is not a little force in
the suggestion that the later is merely a rearrangement of the earlier
Dart. But, however this may be, upon a careful study of the two
claims in question, and taking them as they read, it will be found that
in addition to the fact that the defendant has appropriated the princi-
ple of the invention, the effect of which he should not be permitted to
evade, the brass ring or bushing, making screw engagement with the
coupling ring, may well stand as the second member of the combina-
tion specified, without regard to the pipe end of which it forms the
face, thus fulfilling the terms of the first and second claims, as well as
the third, and making out the infringement charged.

Let a decree be drawn in favor of the complainants, sustaining the
patent, awarding an injunction, and directing an account, with costs.