WINCHESTER REPEATING ARMS CO. v. PETERS CARTRIDGE CO.

(Circuit Court, S. D. New York. July 16, 1909.)

No. 9,518.

PATENTS (§ 328*)—INFRINGEMENT—PAPER SHELL CARTRIDGE.

The Gardner patent, No. 563,157, for a paper shell cartridge, as voluntarily narrowed by the patentee to meet objections of the Patent Office, *held* not infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit by the Winchester Repeating Arms Company against the Peters Cartridge Company for infringement of the Gardner letters patent, No. 563,157, for a paper shell cartridge. Bill dismissed.

George D. Seymour and Edmund Wetmore, for complainant.
Frank T. Brown and Francis A. Hopkins, for defendant.

PLATT, District Judge. This patent is for an improvement in paper shell cartridges. These cartridges are fitted into a metallic cap, and the object of the invention is to so arrange the metal cap as to prevent the paper shell from breaking off at or near the main edge of the cap; thus getting rid of the trouble of extracting the mutilated paper tube by hand, and also to save the paper tube intact, so that it can be reloaded and used again.

In explaining it, the patentee says that his invention consists in a paper shell cartridge composed in part of a paper tube and a drawn sheet-metal cap which is continuously upset around the circumference, so that the metal of the cap may yield sufficiently to take the strain from the tube. He says that it further consists in "certain details of construction" as later described and "pointed out in the claims." He then says that it is obvious that the metal may be adapted in a great variety of ways to yield enough to prevent the tearing of the paper tube, and mentions "annular circumferential grooves rolled in it," or "longitudinally or diagonally arranged crimps formed in it," or "upset to form a band of letters or characters; * * * the only requirement being that the metal shall be upset in some form that will permit it to yield a little at or near the point where the tube enters it."

He takes as an illustration a cartridge in which the metal cap has several annular circumferential grooves located in planes at right angles to the longitudinal axis of the cartridge. These grooves, he says, permit the metal cap to yield in both directions, longitudinally and diametrically, so that the paper of the tube will not be abruptly broken off

at or near the point where it enters the cap, and he has found that the principal yielding is longitudinal. He says that it will be noted that the grooves of his illustration extend continuously around the cap, which would not yield if they were interrupted. He further says that, if he were to use crimps, letters, or characters, it would be necessary to have them *joined together,* so as to have the effect of a continuous upsetting of the metal. His first claim calls for a metal cap which is "continuously upset around its circumference," and the second claim calls for a metal cap with "one or more annular circumferential grooves located in a plane or in planes at a right angle to the longitudinal axis of the cartridge."

We are now concerned, of course, with what Gardner disclosed and claimed. It is unimportant what later investigation may have shown the facts of the case to be. His idea plainly was that to obtain the objects of his invention it would be necessary, in upsetting the metal of the cap, to maintain a continuous and connected upsetting clear around the cap. He does not use the word "connected"; but all that he does say implies its use. The file wrapper and contents emphasize this view. He began with very broad claims, calling for a cap "constructed to be yielding at or near the point where the paper tube enters it," or "with one or more circumferential grooves which permit it to yield slightly." The claims were rejected on Jackson, 390,082, Thompson (British), 5,275, and Laws, 131,101.

The patentee thereupon recast his specifications and claims into their present form, and on May 20, 1896, sent the resultant along to the Patent Office, with a few words of argument at the end. The "reference" which he discusses is evidently the British patent to Thompson, 5,275, in which are shown diagonal depressions in a metal cap, which are, however, placed side by side, and do not actually connect. He argues to the examiner that the plain surfaces between these diagonal depressions will prevent the cap from yielding, so as to relieve the strain upon the tube. This, it is argued, is the object which the patentee is after in upsetting his metal cap, which contemplates a continuous upsetting of the cap, *"such, for instance, as the grooves of the cap shown in the drawing."* (All italics in this opinion are mine.) Look at his next sentence:

"If grooves are not employed, but characters are employed, they will be connected by upsetting the metal between them, so as to link them all together, as has now been set forth in the specification."

He started with the idea of making any disposition of the metal in the cap which would permit it to yield so as to save the paper tube, and, meeting resistance by the examiner, he voluntarily narrowed his disclosure and claims, so as to make it necessary to continuously upset the metal clear around the cap in his first claim, and more narrowly still in the second claim, viz., to upset the metal in annual circumferential grooves located in a plane at right angles to the longitudinal axis.

The law compels him to abide by the consequences of his own voluntary act. His remedy lay in appeal to higher authority when he encountered the examiner's resistance. From the present viewpoint, it

would seem that in the light of the prior art he was entitled to broader claims than he accepted; but he cannot enlarge them now on that account. To do so would work the rankest kind of injustice on our citizens, who are, as a general rule, law-abiding, peace-loving and honest. He had his day in court when the Patent Office made objections, and he must accept with such grace as he can muster up the position which he made for himself.

Construing the claims of the patent in the way suggested, it will be obvious to one who examines the alleged infringing structure, as exemplified in "Complainant's Exhibit Peters' Ideal Shell," that it does not infringe. The metal shell is not "continuously upset around its circumference," nor has it "one or more annular circumferential grooves located in a plane or in planes at a right angle to the longitudinal axis of the cartridge." The diagonal depressions are side by side and distinctly separated, just as they were in the Thompson British patent, and there are no annular circumferential grooves at all. Broken parts of rings appear on the metal cap, separated by considerable expanses of plain metal, and, although the broken parts of one ring appear where the expanse of plain metal shows between the parts of the other, there is nothing in the construction which sanctions the illustration of the dovetailing of brick in a wall. The brick of a wall, when laid for use, form a homogeneous whole, and the broken parts of these rings are widely separated by plain metal, which will obstruct the yielding function so indispensable to the patent.

This ends the case on the merits, from my point of view. It is giving the complainant the benefit of a number of contested propositions which come up in advance of the merits, viz., the right of complainant to sue as a corporation, and the proof of sale of the alleged infringing cartridge within the district. I have decided the case on its merits, because it seems to me that it would be better to have the real issue settled speedily.

It was not incumbent upon the defendant to take upon itself the burden of showing that it did not infringe; but, on the whole, from a patent viewpoint, when we find that defendant's shell, after firing, is not lengthened, and that it is beveled on the interior at the end near which the paper shell might break, it is far from clear that, even construing the patent as complainant wishes, there is any infringement. The talking points story shows that some one connected with the defendant had a notion for a time that there was infringement; but the fact that he thought so did not make it so.

Let the bill be dismissed.