### SHARP & SMITH v. PHYSICIANS' & SURGEONS' APPLIANCE CO.

(Circuit Court, E. D. Wisconsin. December 15, 1909.)

1. PATENTS (§ 168*)—CONSTRUCTION—LIMITATION BY PROCEEDINGS IN PATENT OFFICE.

The fact that a claim in an application for a patent was rejected by the Patent Office, and another substituted by the applicant, does not preclude a broad construction of the claim as allowed, except as to features which were clearly surrendered by the substitution; and where the claim as allowed contained a new feature or element, not contained in the original claim, such feature or element is entitled to the benefit of the doctrine of equivalents, wholly unaffected by the rejection of the original claim.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. § 168.*]

2. PATENTS (§ 328*)—INVENTION AND INFRINGEMENT—JOCK-STRAP AND SUSPENSORY.

The Bennett patent, No. 594,673, for a combined jock-strap and suspensory, was not anticipated, and discloses invention, and is not to be so narrowly construed as to limit the patentee to the precise method of construction of the article shown. As so construed, held infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit by Sharp & Smith, a corporation, against the Physicians' & Surgeons' Appliance Company. Decree for complainant.

Dyrenforth, Lee, Chritton & Wiles, for complainant.
A. L. Morsell, for defendant.

SANBORN, District Judge. Suit for infringement of patent No. 594,673 for a combined jock-strap and suspensory issued to Charles F. Bennett November 30, 1897, and for an injunction and accounting in the usual form. The defenses are that the patent is invalid and noninfringement. Defendant's bandage is an exact counterpart of complainant's in material, shape, and function, but is put together in a different way. It is claimed by defendant that, if the patent is valid, it must be construed so narrowly as to cover a bandage made precisely as described in the patent claim, excluding any other.

Jock-straps are quite similar to the common swimming trunks made of cotton cloth, and which were extensively in use for the purposes of a suspensory bandage prior to the introduction of the patented bandage. The jock-strap is designed to hold the male private organs in the position of greatest safety, so that athletes, equestrians, etc., may be protected against accident to those organs. By this device the parts

are steadily held up against the lower part of the abdomen, and above the lower abdominal bone or pubis, so that behind them is only the soft muscular wall of the trunk. They are thus held completely above the crotch, so that a jar or fall such as might be received on any article of gymnasium equipment, or on a bicycle, motor cycle, or horse could not inflict any injury. Prior to the introduction of complainant's device, former devices, to be mentioned in connection with the prior art, had been practically discarded by athletes for the common cotton swimming trunk.

Although the jock-strap may be loosely called a suspensory, yet there is an important distinction between jock-straps and suspensories. The suspensory is designed to hold the parts up slightly, in order to relieve muscular or nervous strain, and not to hold them in such position that they cannot be injured. The jock-strap, on the other hand, must be so made and the material must be of such a sort that, when the parts are placed in the position shown by experience to be the best adapted for safety, they will be maintained in this position in spite of any movements of the body that may be connected with the various exercises of the athlete. It is also essential that the material and its arrangement should be such as to prevent any slipping away from the position in which they are placed during exercise. In order that a device of this kind may possess these fundamental characteristics, there must be elasticity so as to allow the bandage to lie close to the body and keep in place during exercise, and at the same time be of such a nature that the parts will not be unduly heated or subjected to undue pressure. For comfort, as well as sanitary reasons, it is desirable that the anal opening should be left uncovered.

In the patented supporter the material is so arranged as to provide a pouch or sack for the reception of the parts; the whole being made of elastic material and so arranged as to bring the greatest strain at the sides of the material, so as to prevent the slipping or escape of the parts from the pouch or sack. It is a one-piece jock-strap, so put together as to create a pouch, pocket, sack, or "medial fullness" for the parts, as distinguished from a flat strip like the old swimming trunk. It contains thigh-circlets, and comprises a wide front elastic pouch portion and narrower circlets, and is so constructed that the greatest tension comes at the outer edge of the thigh-circlets, thus holding the parts in place and preventing their escape under movement and strain.

In order to illustrate what seems to be the main claim to novelty of the patent, take a piece of paper four inches wide and ten inches long, fold it in the middle lengthwise, and cut or tear it along the line of the fold four inches from one end towards the other. If the two detached ends, each two inches wide by four inches long, are then crossed at right angles to each other, the whole idea of the sack or "medial fullness" of the device will be at once understood. Then, if the two narrower pieces are gummed together, the paper may then be set upon the table like a chair without legs, and will have an upright back in the shape of two sides of a box, and a flat seat and two extending wings to steady it. Now if a waistband is attached to the uncut end of the strip of paper, and the narrower strips are extended, brought up, and attached to the lower edge of the waistband, the device of the patent in suit will be fully exhibited. The sole claim of the patent is as follows:

"A combined jock-strap and suspensory comprising an endless belt portion, and two elastic belts separated at one end and attached to the rear of the belt and crossed intermediate of their length and secured together at their inner edges from said point of crossing to the other end and attached at said other end to the front of the belt, whereby there is provided at the rear an opening and at the front a pouch substantially as and for the purpose set forth."

The defendant's jock-strap is exactly the same in form as the other, but is made in a different way. The pouch is made by cutting a notch in the end of the middle band and bringing the edges together and sewing them. The thigh-circlets are then sewed on to the bottom of the pouch. It is exactly the same thing made in a different way. It contains every structural feature of the patented article. Therefore, if the patent is valid and not to be too strictly construed, there is no question of the infringement.

As to the prior art, none of the prior patents were designed to hold the parts up against the abdomen, except possibly the Hall patent, No. 425,784, and the Pfister patent, No. 452,529. Neither of these, however, provided any pouch or sack. They were much the same as the swimming trunk. The only patents in the prior art which contained anything approaching the sack or pouch are the Rawson patent, No. 39,452, and the Hill patent, No. 208,240, both of which were pure suspensories, not designed to hold the parts against the abdomen or out of the reach of harm.

It also appears from the testimony that, immediately after the issue of the patent in suit, the form of the jock-strap covered by it, and known in the trade as the "Bike" supporter, came on the market. Prior supporters were sold at 50 cents, and the "Bike" at 75 cents. As soon as the latter could be bought, practically all athletes took to it as an improvement in place of the Morton device or swimming trunk, which was then practically the only one in use. All other devices were almost entirely rejected, and the "Bike" supporter or patented device almost completely displaced them.

I think invention is shown in the specifications and claim of patent, in that the patentee, in a simple and inexpensive manner, by the use of two pieces of elastic material, was able to form a pouch or sack so adjusted that the line of greatest tension is at the sides of the pouch, thus not only giving room for the parts, but holding them in the position of greatest safety, and so preventing their displacement that no movement, however violent, on the part of the wearer will make any change or readjustment necessary. Prior devices were superseded, the article came into immediate and almost universal use, and so remains up to the present time, except to the extent it may be displaced by the similar device of the defendant. I do not think anything in the prior art anticipated the invention of the patent, and that, if infringement exists, there should be a decree in its favor.

I find the most serious question in the case, as it seems to me, depends upon the proper construction of the claim of the patent in the light of the evidence shown by the file wrapper. The original application contained three claims, each of which attempted to cover a new article of manufacture, a jock-strap formed of elastic material with an endless waistband and endless thigh-circlets. A jock-strap in combi-

nation with a suspensory and formed integral therewith is also claimed. These claims were all rejected as anticipated by the Hall and Pfister patents and one other, on the ground that it was common to make supporters of elastic material, and for other reasons. The applicant then amended his application and substituted a single claim for a combined jock-strap and suspensory comprising an endless belt portion and two elastic bands secured apart at one end and secured together at the other end to the opposite side of the belt. It will be seen that so far no claim was made to what is here considered the patentable feature; that is, the pouch or "medial fullness." The claim was again rejected on the references cited against the first three claims and also on the Rawson patent. The applicant again amended his case by requesting the cancellation of the previous claim and the substitution of a claim substantially the same as that of the patent, omitting, however, the following:

"Whereby there is provided at the rear an opening and at the front a pouch."

This claim was again rejected, on the ground that it covered nothing more than a pair of suspenders attached to a belt. The examiner further stated:

"The case is considered devoid of patentable novelty."

Thereupon the applicant canceled the previous claim and substituted the claim which was finally allowed. In the argument accompanying the last amendment, the following statement was made:

"Applicant has produced a new article made from three strips or bands of elastic material so arranged and connected as to provide the necessary rear opening and the front pouch, and the simplicity and cheapness of the article, aside from its novelty, argues in favor of an allowance of a claim therefor."

And it was further stated that the new claim is presented as more clearly defining the invention and to emphasize the feature of the device upon which the invention is predicated, and that the references cited do not show an article, while serving every purpose, but yet so simple and inexpensive and being made from three lengths of material of substantially the same width and same material, and that it required ingenuity and inventive skill to divide a single strip of material so as to form three parts and so combine and attach those parts as to make an article which will with increased efficiency answer the purposes of the cumbersome and comparatively expensive devices shown in the prior art.

It is claimed that the result of this history is that the only difference between the patented article and those of the prior art, to which the examiner's attention was called, consisted in the make-up—that is, the fact that the patented jock-strap is formed with three pieces or strips of material, and that the inventive act is stated in his argument to be that of so combining these three strips so as to form a jock-strap —and that whatever increased efficiency was believed to exist was supposed to be due to the make-up of the article from three pieces of material, two of which were crossed and connected at their side margin so as to form the pouch.

The rule of Winchester Repeating Arms Co. v. Peters Cartridge Co. (C. C.) 173 Fed. 86, in the Second Circuit, is cited, to the effect that,

where a claimant for a patent is entitled to broader claims than those he accepts, everything not contained in the patentee's claim is dedicated to the public; and that, inasmuch as applicants for patents have the right of appeal from the decision of the examiner, they should take that remedy, rather than submit to the unjust narrowing of their claims; and if they do not do so, but submit to the decision of the examiner, everything previously claimed of a broader nature than that contained in the patent is absolutely lost. While the case just cited undoubtedly expresses the law in a general way, yet the rule in this circuit is deemed to be very much more liberal to applicants for patents than that stated in the cited case. This is emphatically shown by the case of Gray Telephone Pay Station Co. v. Baird Mfg. Co., 174 Fed. 417, 98 C. C. A. ——. In that case the court says:

"In the course of his attempts to save his idea while seeking to meet the demands of the examiner, he seems several times to have come perilously near recantation. His struggle is apparent at every step. Notwithstanding the seeming abandonment of his basic claim by counsel, he continually returns to it and is at last defeated by the examiner."

It further appears on appeal to the examiner in chief the case went off on another point, and it was held that the patentee was not in that case limited to the particular form of signal production mentioned in his claim, and did not waive his fundamental claim, the only one which showed any novelty.

An applicant in attempting to procure an allowance of his claim by the Patent Office is dealing with an exceedingly practical question. He is generally very desirous of avoiding the expense and delay of an appeal, and he is sometimes brought to yield things to which he is entitled under stress of this situation. If he clearly gives up anything to the public, he cannot afterwards claim it; but the record in the file wrapper is not to be construed too strictly against him. Such a rule would work intolerable hardship. The patentee puts nothing forward now which was rejected in the Patent Office. The examiner did not reject the pouch feature of the article, but his decision was entirely addressed to other matters. Western Tube Co. v. Rainear (C. C.) 156 Fed. 49, 56.

While a patentee cannot revive a rejected claim by a broad construction of a claim allowed, he is entitled to a fair construction of the terms of the claim as actually granted. Hubbell v. U. S., 179 U. S. 77, 21 Sup. Ct. 24, 45 L. Ed. 95.

I do not think that the patentee ever surrendered, or intended to surrender, the pouch feature of his invention. It is true that, in order to persuade the examiner to allow his patent, he emphasizes other matters; but there is nothing in this to show any intention to surrender or abandon the important and fundamental feature in question.

In view of these considerations, complainant is not to be confined to the precise method of constructing his invention as shown by his claim. Defendant has the same article in identically the same form, only made in another way.

I think there was invention and infringement, and that an injunction and accounting should be decreed.