## SMITH et al. v. UHRICH.

(Circuit Court, E. D. Pennsylvania. May 26, 1899.)

### No. 22.

1. **PATENTS—INFRINGEMENT BY IMPROVERS.**

   An improvement may be itself patentable, but the inventor of the improvement acquires no right to appropriate the main invention to which his improvement relates; and it is of no consequence that a patented article be so dealt with as to impair its usefulness, if its essential features be still retained.

2. **SAME—INTRODUCTION OF EVIDENCE.**

   The defendant should complete his evidence with respect to the state of the art before the taking of complainant's testimony in rebuttal, and any additional testimony and exhibits thereafter taken, even for the sole purpose of narrowing the claims, will be suppressed on motion.

3. **SAME—VALIDITY AND INFRINGEMENT—SPRING-TOOTH HARROWS.**

   The Smith patent, No. 522,435, for improvements in spring-tooth harrows, construed, and *held* valid and infringed as to claims 1 and 2.

In Equity.

M. W. Jacobs, for complainants.

Clark C. Wood, for respondent.

DALLAS, Circuit Judge. This is a suit upon letters patent No. 522,435, dated July 3, 1894, granted to William E. Smith, for im-

provements in spring-tooth harrows. The claims alleged to have been infringed are as follows:

"(1) The combination of the hub and spring tooth mounted therein, of the cylinder mounted in the hub, and means for pressing the cylinder onto the tooth to secure it in position, substantially as described. (2) The combination with the hub, having ribs forming a recess for the reception of the tooth, and having an opening therethrough of a cylinder fitting the opening loosely, and bearing on the tooth, and means for pressing the cylinder in position, substantially as described."

The presumption of its validity which arises from the grant of this patent has not been overcome. The invention to which it relates is, however, neither a primary nor a great one. It follows that it must be sustained, but that the monopoly which it creates is not to be expanded by interpretation. Yet, although its claims are to be confined to the specific combinations which they describe, their scope should not be so restricted as to admit of the avoidance of infringement by resort to merely colorable and evasive variations; and, in my opinion, the differences between the combination of the two claims in suit and that of the defendant amount to nothing more. This, in substance, has been testified to by the complainants' expert, upon grounds which I think entirely satisfactory; and the correctness of his conclusions has been impugned but by two witnesses, neither of whom can be said to be disinterested, and one of whom, at least, does not appear to be free from bias. The complainants' expert to whom I have referred, produced a drawing, prepared by himself, illustrating the constructions in controversy, upon which he had marked the corresponding features and component parts of the respective devices, with the same reference letters. The following is a reproduction of that drawing.

In explanation of this drawing the witness testified as follows:

"It will be noted that each of the devices illustrated in the blue print embodies the hub or yoke, B, which may be made of cast metal or otherwise, but it is shown therein that it is cast in one piece; and each is provided with the opening, $B^1$, and the underside is provided with lugs, $bb^1$, projecting inwardly, and forming the seat for the shank of the tooth, T. Each of said structures has also the opening, $B^2$, through the bottom, between the ribs, and to the opening $B^1$. And the said ribs are so arranged that when the tooth is in position it will extend slightly into the opening $B^1$. Through the opening $B^1$ passes a cylinder or piece of metal tubing, which is termed the connector, C, in the specification of the patent. Said connector is employed to tie together the longitudinal bars of the frame, by the aid of a bolt passing through the longitudinal bars and through said connector. Therefore the said connector performs the same function and is the equivalent of the crossbar of an ordinary harrow frame. I furthermore observe, in said blue print, that in each instance the aforesaid tube or connector is pressed down on the underlying tooth shank so as to effectually clamp it on the ribs, $bb^1$, by the setscrew, F, connected to the hub or yoke, B, in substantially the same manner."

Upon the whole evidence, I am satisfied of the substantial identity of the parts as thus indicated. In appearance, of course, the two devices are not precisely alike; but this, in itself, is immaterial. Perhaps the most striking differences are that in the defendant's arrangement the setscrew is longer than in that of the patent, and extends through a hole in the cylinder, and presses upon its inner surface, and that the ribs are in the one device transverse, while in the

D. A. UHRICH'S
(HARROW TOOTH HOLDER

TOOTH HOLDER
IN PATENT
No. 522,435

other they are longitudinal; but that the real purpose, mode of operation, and effect of these elements is the same in both instances is perfectly plain.

It has been contended that the defendant has attained some advantages which the patentee had not attained, and that he has relinquished others which the patentee must have regarded as important. I have not been persuaded that this is true, but, if it were, it would not be material. An improvement may be itself patentable, but the inventor of an improvement acquires no right to appropriate the main invention to which his improvement relates; and it is of no consequence that a patented article be so dealt with as to impair its usefulness, if its essential features be still retained. The attempt has also been made to differentiate the two constructions by reason of the absence of a disk and bolt from that of the defendants, but

these parts are not included in claims 1 and 2, and are expressly added in claim 3, which is not alleged to have been infringed.

The motion made by counsel for the complainants to suppress a portion of the deposition of Clarence E. Bement, taken on June 23, 1898, and certain exhibits referred to in said deposition, must be allowed. The defendant should have completed his evidence with respect to the state of the art before the taking of complainants' testimony in rebuttal. He had no right to introduce additional testimony and exhibits, even for the sole purpose of narrowing the claims, after the evidence of the complainants had all been taken, and their expert had been fully examined with reference to the prior art as it had then been made to appear. A number of patents were introduced in this irregular manner, and the only witness called to explain them was Clarence E. Bement, who did not do so in sufficient detail to adequately support the opinions which he expressed. Yet, being reluctant to disregard any matter which might possibly be persuasive, I have, with such aid as could be derived from Mr. Bement's testimony and the arguments of counsel, examined these patents, but cannot find that, if offered in due season, they would have changed the conclusion which I have reached. Decree for complainants.