SPIRELLA CO. v. NUBONE CORSET CO.

(Circuit Court, W. D. Pennsylvania. June 7, 1910.)

No. 2.

1. PATENTS (§ 312*)—INFRINGEMENT—EVIDENCE.

The employment by a defendant as its superintendent of a former employé of complainant, familiar with its patented article, and the manufacture by defendant of an article very similar to complainant's under the claimed protection of a patent subsequently obtained by such superintendent, are facts which would determine the issue of infringement in favor of complainant if otherwise doubtful.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 543–549; Dec. Dig. § 312.*]

2. PATENTS (§ 328*)—INFRINGEMENT—CORSET STAY.

The Beeman patent, No. 507,875, and the White & Rider patent, No. 645,444, each for a dress or corset stay of wire, construed, and both *held* infringed by the corsets made by defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 283*)—INFRINGEMENT—DEFENSES.
    That a defendant is operating under another patent does not avoid liability for infringement.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–452; Dec. Dig. § 283.*]

4. PATENTS (§ 239*)—INFRINGEMENT—COLORABLE CHANGES.
    Infringement is not avoided by making in a plurality of pieces something which under the patent consists of a single piece.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 377, 378; Dec. Dig. § 239.*]

In Equity. Suit by the Spirella Company against the Nubone Corset Company. Decree for complainant.

F. W. Winter, for complainant.
Hugh C. Lord, for defendant.

ORR, District Judge. Complainant seeks to restrain infringement of letters patent of the United States No. 507,875, issued to Marcus M. Beeman on October 31, 1893, and of letters patent of the United States No. 645,444, issued to John P. F. White and Samuel S. Rider, on March 13, 1900, each of which is for an improvement in dress or corset stays. The bill is in the usual form, and prays the customary relief. Although the answer denies all the allegations of the bill, excepting the issuance of the patents and the corporate existence and domicile of the complainant, yet the validity of neither patent is attacked in the proofs. The real defense is that the defendant's stays and corsets do not embody anything which was novel with either Beeman or White and Rider, in view of the prior art and the proceedings in the Patent Office resulting in the issuance of the said patents. In brief, the only defense is noninfringement. The complainant being the owner of said two patents is using them jointly and separately in the manufacture of corsets. It has met with great success in the sale of its product, which has always embodied the construction of the Beeman patent, and for some years past has embodied the essential features of the White & Rider patent. The utility of the inventions became known to many, among whom was John R. Dean, who for perhaps two years was employed by complainant, and who while in such employ made a corset stay but very slightly different from those of complainant. He subsequently procured letters patent of the United States No. 868,763, to protect his stay, became connected with defendant corporation, and is now its superintendent. The stays made by the defendant are claimed by them to be protected by the Dean patent. This employment of Dean and use of his patent would throw the scales in favor of complainant if the issue were doubtful. Regina Music Box Co. v. Paillard (C. C.) 85 Fed. 644; Kelsey Heating Co. v. Spear Stove & Heating Co. (C. C.) 155 Fed. 976. An examination of the patents shows beyond doubt that defendant's stay is a mere evasion of complainant's patents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Beeman Patent.

In his specification Beeman says:

"My invention relates to the construction of dress stays or stiffeners for corsets and other garments." "My object is to produce the stays or stiffeners for corsets and other garments in which the elasticity, usually imparted by the whalebone, is produced by a round or flattened wire bent as hereinafter described and shown so that the stay may be bent laterally or otherwise, at the same time assuring its speedy return to its normal position."

Complainant's expert, Mr. Wadsworth, has carefully and satisfactorily analyzed the patentee's description of a particular form of stay in the following language (italics his):

"A is the flexible metallic body, consisting of a continuous piece of spring wire, bent laterally forward and back, as shown in Figs. 1 and 2, and in such manner that (1) the eyes or openings between the bands are circular at their outer ends; and (2) taper in the line of their length, or traverse of said body; and are formed (3) by bending the wire first to form the circular outer ends and then bending the wire toward the starting end of said body—*so that it touches and overlaps the side of the adjoining round bend of said wire. This bending of the wire so that the sides of the eyes on both sides of the body are in close contact with and overlap each other gives each side of an eye a bearing upon the side of the adjoining eye, whether the body is bent (1) flatwise, (2) forward or back, or (3) laterally and edgewise.*

"The overlapping of the eyes one upon each other (1) *readily permits the sliding of the eyes, one over the other,* which tends to decrease the length of the radius of the curve when the body is bent in any direction, forward, back, or sidewise, and (2) *absolutely prevents any short bends and consequent breakage, or* (3) *consequent destruction of the resiliency of the spring,* at the apex of the short bend, which causes the body to stay bent; and (4) *on the other hand, largely increases the resilient action of the wire,* (5) *stiffens the body,* (6) *prevents the wire from becoming 'set' when the body is bent, and* thus causes the body to always spring back to its normal position.

"A covering, 1, consists of a piece of fabric pasted or secured upon the front or back, or both, having a protecting end adapted to be folded over the end of the spring body, as a protection, as shown in Fig. 3."

The claim of the patent is as follows:

"As an improved article of manufacture, a dress stay comprising a body, consisting of a wire bent to form a series of oppositely disposed pear-shaped eyes, each side of which normally bears against and partly overlaps the adjacent side of the adjoining eye, and a protecting covering secured to and inclosing said body as specified."

The prominent feature of this claim is the overlapping of the eyes. It is clear that none of the 22 United States patents, 5 British patents and 2 German patents set forth in the amended answer, so far as they are embodied in the proofs, indicate anticipation either of this prominent feature of the Beeman patent or of the prominent feature of the White & Rider patent hereinafter mentioned.

Defendants seriously contend that the stays made by them do not infringe because they are made with two or three wires, while complainant is limited in construction to one wire. They insist that there is no infringement because the loops in their wires are not pear-shaped, and that Beeman limited himself by amendments to his claim, as shown in the file wrapper and contents, to a particular shaped eye, "pomological" in character. It is plain that "pear-shaped" is purely figurative. What Beeman actually described was a loop longer than

it was broad. To have the loops made from a single wire, and to have them oppositely disposed would result in that kind of a loop. Beeman did not limit himself to pear-shaped loop or eye. Defendants also state that while their stays have oppositely disposed loops or eyes, which overlap adjacent loops or eyes, yet there is no infringement because their overlapping loops or eyes are not overlapping loops or eyes of the same but of different wires. These and other contentions less strongly urged are wholly without merit. Defendants are using the main features of the Beeman patent, to wit, wire bent to form a series of oppositely disposed loops or eyes, each side of which normally bears against and partly overlaps the adjoining loop or eye.

## White & Rider Patent.

As it is not insisted that the subject-matter of claim 2 of this patent is present in any of the stays made by defendants, claim 1 only is to be considered. It is as follows:

"1. A garment stay or stiffener formed from a single piece of wire capable of being flexed in all directions, and comprising a series of flattened loops or convolutions overlapping one another, said stay or stiffener being bent longitudinally between its edges, whereby the said overlapped portions of the convolutions are brought into more intimate contact with each other and the stay or stiffener rendered more rigid, substantially as described."

The prominent feature of this claim is the longitudinal bending of the overlapped loops. Defendants here again insist that their stays do not infringe the White & Rider patent because they are not made from a single wire, and because their loops, while overlapping, are not overlapping loops of the same but of different wires. They further insist that there is no infringement because their stays while composed of flat loops are not composed of flattened loops.

They further contend that the longitudinal bending of the stay does not render the stay more rigid. I find that fact against them. The defendant's stays (both the two and three wire stays) are concaved or bent longitudinally between their edges. It is seen by a cursory glance along any one of them. In this they infringe the White & Rider patent, prior to which there was nothing in the art to describe or suggest the longitudinally concaved feature so apparent. Defendants are making a two-wire stay and a three-wire stay. The first is clearly described in the Dean patent. The latter, while somewhat different, is the equivalent of the former. This defendants should not deny for they stamp all their stays with the date of the Dean patent. That defendants are operating under a patent does not relieve them from infringement. Smith v. Uhrich (C. C.) 94 Fed. 865, and Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715, are but two of many cases sustaining this principle. It seems unnecessary to cite authorities to the effect that infringement is not avoided by making in a plurality of pieces something which had been made in a single piece. If authority be wanted, it may be found in Strobridge v. Lindsay (C. C.) 6 Fed. 510; Kelsey Heating Co. v. Spear Stove & Heating Co., supra; Sharp & Smith v. Physicians and Surgeons (C. C.) 174 Fed. 424.

The improvements both of Beeman and of White & Rider were broadly stated or shown in the original application and were never receded from. The complainant, being the assignee of both patents, is entitled to have included within the claims of each, all wire stays having the above stated novel feature of the respective patents. Defendants' stays are within the claim of the Beeman patent and claim 1 of the White & Rider patent. Complainant is entitled to the relief sought.

Let a decree be drawn in conformity with this opinion.