RADIO CORPORATION OF AMERICA et al. v. ANDREA et al.

No. 155.

Circuit Court of Appeals, Second Circuit.

Nov. 12, 1935.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for appellants.

Sheffield & Betts, of New York City (Thomas G. Haight, of Jersey City, N. J., and Abel E. Blackmar, Jr., of New York City, of counsel), for appellees.

Before MANTON and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The patents in suit relate to electrical circuits extensively used in radio receiving sets. They cover the audion "oscillator" and the superheterodyne or "feedback" circuit. Validity of the patents has been authoritatively adjudicated. Radio Corporation v. Radio Laboratories, 293 U. S. 1, 55 S. Ct. 928, 79 L. Ed. 163. The defendants raise no question as to validity, nor as to the plaintiffs' title. Neither do they dispute that the apparatus which they make and sell would infringe the claims in suit if it were used by the purchaser within the jurisdiction of the United States. Their apparatus is sold solely for export, and their contention is that, when it is sold, the patented combination is incomplete and is not intended to be completed except outside the country. Hence they deny that there is proof of any direct infringement, and they claim to escape contributory infringement under the well-established doctrine set forth in Bullock Electric & Mfg. Co. v. Westinghouse Electric & Mfg. Co., 129 F. 105 (C. C. A.).

The case was heard upon bill, answer, and supporting. and opposing affidavits. The uncontroverted facts with respect to sales by the defendants are as follows: The defendants manufacture at the plant of the corporate defendant radio receivers, exclusive of the vacuum tubes required therefor. The tubes are purchased by the defendants in the open market. To operate the receiver, it is necessary to insert the vacuum tubes into the sockets provided for them and to connect the receiver by means of a wire and plug provided for that purpose to a source of electrical power, such as the electric lighting system in the user's home. When so operated, it is conceded that the invention of each of the patents in suit is present, but, when the receiver is sold, it is of course not connected to a source of electrical power, nor are the vacuum tubes inserted in their sockets. The tubes are separately packaged and placed within the same carton as the receiver. Although the sales are completed within this country, the receivers are to be used only outside United States territory.

The claims held to have been infringed are claims 24, 25, 26, 27, and 28 of patent No. 1,507,016 and claims 15, 17, 18, 19, 20, and 21 of patent No. 1,507,017. Two of the claims are for the method of generating or producing alternating currents by "causing current to flow" in one of two coupled circuits, and it is apparent that these claims cannot be infringed until the receiver is operatively connected to a source of electrical current. The defendants contend that all the claims expressly or by necessary implication include the current source as an element of the claimed combination. But it will suffice for present purpose to consider only claim 25 of the first patent and claim 19 of the second. These at least, the plaintiffs argue, are infringed when a receiver wired for the superheterodyne circuit

and with the vacuum tubes packaged in the same carton are sold in this country.

Claim 25 of patent 1,507,016 reads as follows:

"25. Means for producing sustained electrical oscillations comprising an oscillatory circuit having two electrodes in an exhausted receptacle and a second circuit coupled thereto having a conducting body interposed between said electrodes."

It is assumed for present purposes that this claim does not include as an element of the claimed combination the electric current source. The combination does require, however, a particular relationship to be established between the oscillatory circuit and the second (superheterodyne) circuit, and it is apparent that such relationship cannot be attained until there is a physical connection between the terminals of the circuits and the electrodes of the vacuum tube; that is, until the tubes are inserted in the sockets of the receiver. The defendants have sold the elements capable of forming the patented combination but have not made or sold the combination itself unless the elements are physically connected in an operable relationship.

The same argument applies even more literally to the words of claim 19 of patent 1,507,017, which reads:

"19. In an electrical system, an evacuated vessel, hot and cold grid and plate electrodes therefor, a circuit connecting each of said cold electrodes with said hot electrode, said circuits being associated to react upon one another."

Hence it follows that sales of the disassembled elements of the patented combination are not a direct infringement, although the claims be construed, as the plaintiffs urge, not to call for a source of electrical power. K. W. Ignition Co. v. Temco Electric Motor Co., 283 F. 873 (C. C. A. 6), and Barnes v. Straus, 2 Fed. Cas. No. 1,022, page 876 (C. C. S. D. N. Y.), upon which the plaintiffs rely, are not authority for the proposition that a sale of all the requisite parts, though disassembled, is equivalent to a sale of the patented combination itself, and hence a direct infringement. In the former case the court regarded the patent as "wholly confined to the shock absorber device" which was completely made in this country. Attachment of the device to the automobile, which was to be done by the purchaser in Canada, was held to be no part of the invention. In the Barnes Case the invention was for an improvement in corset springs. The opinion is devoted to the question of validity of the patent, "as the infringement is not denied." All that is said of infringement is the rather cryptic sentence, "The combination does not have its full effects developed until it is used in the corset, yet it exists pro tanto, so as to be an infringement, when the springs and clasps are made, ready to be inserted in a corset." It is not clear whether Judge Blatchford meant that the patented combination was complete without attachment to the corset, so that making the springs and clasps was a direct infringement, or whether he considered the making and sale of part of the patented combination a contributory infringement, since the springs were intended to be attached and used in this country. In neither view is the decision apposite. Under the facts at bar, however, we cannot say that the patented combination was complete until physical connection is established between the terminals of the circuits and the electrodes of the tube, for such relationship is the essence of the patent.

Nor is this conclusion so highly technical as it may at first blush appear. No wrong is done the patentee until the combination is formed. His monopoly does not cover the manufacture or sale of separate elements capable of being, but never actually, associated to form the invention. Only when such association is made is there a direct infringement of his monopoly, and not even then if it is done outside the territory for which the monopoly was granted. This is the basis for the doctrine of contributory infringement, which permits the elements of a patented combination to be sold in this country with the intent that the purchaser shall make and use the invention abroad. Bullock Electric & Mfg. Co. v. Westinghouse Electric & Mfg. Co., 129 F. 105 (C. C. A.); Computing Scale Co. v. Toledo Computing Scale Co., 279 F. 648, 678 (C. C. A. 7); In re Amtorg Trading Corporation, 75 F.(2d) 826, 831 (Cust. & Pat. App.). Not disputing this principle of law when only part of the elements of a patented combination are involved in the sale, the plaintiffs ap-

parently contend that it is inapplicable when all the elements are sold together, though disassembled and intended to be put into operable relationship only abroad. No authority has been cited which puts any such limitation upon the doctrine of contributory infringement; and on principle none such is justifiable. By their sales for export the defendants were guilty of neither direct nor contributory infringement.

 The plaintiffs further contend that the defendants committed a direct infringement by assembling and using the tubes and receivers in factory tests. The defendants' advertising literature states that "each individual part or completed receiver must pass many special tests." The affidavits of other manufacturers (plaintiffs' licensees) show that the general practice is to test receivers by using them to receive regular broadcast signals. The defendants made no categorical denial that such is their method, but stated somewhat evasively that they did not test on broadcast news or music programs. No method of testing is suggested which would not necessitate assembling the tubes and receiver and using them as the complete combination of the patents in suit. We should hesitate, therefore, to hold that the District Judge was not justified in finding that "each set is tested by defendant before sale or packing for delivery." But he made no express finding that such test was an infringement of the claims in suit, nor is it clearly indicated in his opinion that he would have granted a preliminary injunction if the evidence as to tests were the only proof of infringement. The injunction was granted on the basis that the defendants were manufacturing and selling a complete combination which infringed, even though the tubes were not inserted in the sockets of the receiver at the time of sale. With this conclusion, as already stated, we cannot agree.

Moreover, with respect to the tests, it is open to question whether the defendants in purchasing the vacuum tubes from the plaintiffs' licensee did not obtain an implied license to use the tubes in a superheterodyne circuit. By notice printed on the cartons of the tubes it was attempted to limit their use in such a circuit to use in licensed receivers. Whether the attempted limitation is valid may well turn on what use the tube can have aside from use in a radio receiver. See Edison Electric L. Co. v. Peninsular L. P. & H. Co., 101 F. 831, 836 (C. C. A. 6). The tubes are advertised as "designed primarily" for use in a superheterodyne circuit. The plaintiffs contend that there are other and noninfringing uses for the tubes purchased by the defendants, and hence the license restriction is enforceable. See General Elec. Co. v. Continental Lamp Works, 280 F. 846, 851 (C. C. A. 2). The evidence on this subject is too slight and inconclusive to justify determining on the affidavits presented whether the defendants acquired an implied license. These questions should abide the hearing.

For the foregoing reasons we think the preliminary injunction was improvidently granted.

The decree is reversed.