**RADIO CORPORATION OF AMERICA et al. v. ANDREA et al. (two cases).**

**No. 398.**

Circuit Court of Appeals, Second Circuit.

June 7, 1937.

SWAN, Circuit Judge, dissenting in part.

————◆————

Thomas G. Haight, of Jersey City., N. J., and Abel E. Blackmar, Jr., of New York City, for plaintiffs.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for defendants.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of patents Nos. 1,507,016 and 1,507,017 issued to De Forest. The first is for an "audion oscillator" or generator of electric oscillations and the second for an "audion feed-back circuit." The circuits covered by these patents are used in radio and other arts and are recognized by defendants as inventions of great merit. See Westinghouse Electric & Mfg. Co. v. De Forest Radio Tel. & Tel. Co., 278 U.S. 562, 49 S.Ct. 34, 73 L.Ed. 507; Radio Corporation v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; Id., 293 U.S. 522, 55 S.Ct. 66, 79 L.Ed. 634.

This cause was considered by us on an appeal from a preliminary injunction in Radio Corporation of America et al. v. Andrea et al., 79 F.(2d) 626, where we held

upon the record therein that the sales by the defendants were not infringements. It there appeared that the vacuum tubes were not, at the time of the sale and delivery for exportation to foreign countries, actually in the sockets provided for them in the receiver and, since the sales were for export and the tubes not placed in their sockets, it was not an infringement within the jurisdiction of the patent laws of the United States. It was held to be neither a direct nor contributory infringement. We also held that whether there had been an infringement by assembly or use and whether the defendants by virtue of the purchase of vacuum tubes acquired an implied license under the patents in suit should not be determined on the then record but should await final hearing.

Additional facts were developed at the final hearing. Defendants now admit, by stipulation, assembly and use by testing the completed superheterodyne receivers with vacuum tubes in their sockets to determine the marketability of the receiver. The defendants also admit the making of sales as described. Evidence was received directed to the issue of whether defendants by their purchase of certain vacuum tubes acquired an implied license under the patents to make, use, and sell completed superheterodyne receivers embodying the inventions in suit. The District Judge held that appellees had infringed by use in testing, and that, in view of our previous decision, the defendants' sales for export were not infringements. He also held that the defendants' claim of an implied license arising out of the purchase of such tubes after the time when a use for such tubes other than as oscillators in receiving sets became known to the art was without merit, but that prior to that time there was such an implied license, although such tubes could be used for initial installation and for replacement in receiving sets licensed to use the invention, and this even though each tube sold was accompanied by a notice restricting the use of the tube to replacements in apparatus licensed under the patents. Both plaintiffs and defendants have appealed.

Claims 19 and 25 of the respective patents sued on will be found in the margin.[1]

The elements of the combinations covered by these claims are a vacuum tube and two coupled or associated circuits. The coupled circuits in defendants' receivers are built into the receiver and are connected to a tube socket adapted to receive the type 6—A—7 vacuum tube which cooperates with the circuits to produce oscillations.

At this trial it was admitted by the defendants that the tubes were inserted in the sockets and therefore connected with the circuits while in the defendants' plant and the entire combination was completed and used in testing the receivers. Thereafter, the tube was removed from its socket; then the receiver and the tube (or a duplicate and other tubes used in the receiver for different purposes) were packed in the receiver cabinet and thus sold. The tubes were placed in a separate carton and this, with the receiver, was placed in a larger carton. The purchaser to connect the tube needs only insert it in the socket. No adjustment is required; no screw or nut need be tightened. Where the elements of an invention are thus sold in substantially unified and combined form, infringement may not be avoided by a separation or division of parts which leaves to the purchaser a simple task of integration. Otherwise a patentee would be denied adequate protection. Cf. Eibel Process Co. v. Minnesota Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523.

In 79 F.(2d) 626, we pointed out that the defendants had sold the elements capable of forming the patented combination but had not made or sold the combination itself. For it was necessary that the elements be physically connected in an operable relationship. We said that the sales of disassembled elements of the patented combination was not a direct infringement although the claims be construed, as the plaintiffs urged, as not calling for a series of electrical power. There we considered the case on a bill, answering and supporting affidavits, and said: "No wrong is done the patentee until the combination is formed. His monopoly does not cover the manufac-

[1] 25 (of No. 1,507,016): Means for producing sustained electrical oscillations comprising an oscillatory circuit having two electrodes in an exhausted receptacle and a second circuit coupled thereto having a conducting body interposed between said electrodes

19 (of No. 1,507,017): In an electrical system, an evacuated vessel, hot and cold grid and plate electrodes therefor, a circuit connecting each of said cold electrodes with said hot electrode, said circuits being associated to react upon one another.

ture or sale of separate elements capable of being, but never actually, associated to form the invention. Only when such association is made is there a direct infringement of his monopoly, and not even then if it is done outside the territory for which the monopoly was granted." Page 628.

As to testing, we said: "No method of testing is suggested which would not necessitate assembling the tubes and receiver and using them as the complete combination of the patents in suit. · We should hesitate, therefore, to hold that the District Judge was not justified in finding that 'each set is tested by defendant before sale or packing for delivery.' But he made no express finding that such test was an infringement of the claims in suit, nor is it clearly indicated in his opinion that he would have granted a preliminary injunction if the evidence as to tests were the only proof of infringement. The injunction was granted on the basis that the defendants were manufacturing and selling a complete combination which infringed, even though the tubes were not inserted in the sockets of the receiver at the time of sale." Page 629.

On this record it appears that the receiver and tubes were assembled completely and tests of operation were made after which the tubes were taken out, packed in separate cartons but within the same larger carton as the receiver. The sales for the completed receiving sets were made within the territorial limits of the United States and shipped in export. The single package contained all the elements of the combination.

In Bullock Electric & Mfg. Co. v. Westinghouse Mfg. Co., 129 F. 105, 109 (C.C. A.6), certiorari denied 194 U.S. 636, 24 S. Ct. 859, 48 L.Ed. 1160, the defendants sold but one element of the combination and the court held that this sale did not violate the injunction which had been issued forbidding the sale of apparatus employing the claimed invention and said: "it is elementary that neither the making, selling, nor using of one element of a combination is infringement."

Further: "Unless, therefore, the making and selling of a single element of a patented device, within the limits of the United States, with the intention that it shall be sent without the United States, and there used in association with the other elements of the combination, constitutes infringe-

ment, the defendants did not disobey the order of the court." 129 F. 105, at page 110.

There is a difference between the Bullock and the instant case because here the defendants did sell all the elements of the completed patented . combination, put them together, used them in testing, and then separated them merely within a single package for sale within this country and exportation.

**■** In Computing Scale Co. v. Toledo Computing Scale Co., 279 F. 648, 678 (C.C. A.7), certiorari denied 257 U.S. 657, 42 S. Ct. 184, 66 L.Ed. 420, the patented claim was for a cylinder scale consisting of several parts. "No completed cylinder scale nor completed cylinder was ever shipped to Canada. Some parts were manufactured in Canada, and some were made here and shipped there; but the parts were there assembled into completed scales [in Canada] and there delivered to Canadian users." 279 F. 648, at page 678. In the instant case the invention is defined as a combination of vacuum tubes with circuits. Defendants may not be relieved of infringement merely because the tube electrodes are physically disconnected from the circuits at the moment of sale. Cf. Spirella Co. v. Nubone Corset Co., 180 F. 470, 473 (C.C.Pa.) ; Strobridge v. Lindsay, Sterritt & Co., 6 F. 510 (C.C.Pa.). We hold, therefore, that on this record there is infringement by the sale of the combination as described.

**■** The testing process was held below to be an infringing use from the time certain noninfringing uses were developed. The testing was a commercial use of the completed combination of the patents "just as it is to be used by the ultimate purchasers," even though the receiving waves and musical tone were generated in a laboratory rather than at a distant transmitting station. It is enough that it was necessary to assemble the tubes and the receiver and to use them as a complete combination of the patent in suit. The tests were made to see if they were marketable—a commercial and hence an infringing use. Cimiotte Unhairing Co. v. Derboklow, 87 F. 997 (C.C.N.Y.)

**■■** But the defendants argue that in purchasing the tubes in the open market from the plaintiffs' licensee they acquired an implied license to assemble and test the complete superheterodyne receiver. It is further observed that these tubes are "primarily designed" for the use complained of.

But the existence of other uses and the notice accompanying the sale of each tube negative the grant of any license. General Electric Co. v. Continental Lamp Works, Inc., 280 F. 846 (C.C.A.2). Edison Electric Co. v. Peninsular Light Co., 101 F. 831 (C.C.A.6), is to be distinguished since the elements of estoppel—the controlling test—were clearly displayed.

A mere sale imports no license except where the circumstances plainly indicate that the grant of a license was inferred. It is not sufficient that these tubes were primarily designed for the use to which objection is made. The tubes could be used to replace others which had been sold by licensees; the Pilot Radio Corporation and the Stromberg Carlson Tel. Mfg. Company had noninfringing uses. Besides, the notices that the "tubes are to be used in systems already licensed for use" are explicit and clear. We recognized the effect of such notices in General Electric Co. v. Continental Lamp Works, Inc. The use of the tubes was an infringement at all times.

Decree modified.

SWAN, Circuit Judge (dissenting in part).

In holding that the sale in this country of the disassembled parts of the invention for assembly and use abroad is a direct infringement, I think we overrule our prior decision in Radio Corporation v. Andrea, 79 F.(2d) 626. Unless and until that opinion shall be declared wrong by the Supreme Court, I should prefer to abide by it. In other respects I agree with the present opinion.