HEWITT–ROBINS, INC., Plaintiff-Appellant,

v.

LINK–BELT COMPANY, Defendant-Appellee.

No. 15655.

United States Court of Appeals Seventh Circuit.

Nov. 30, 1966.

W. Houston Kenyon, Jr., New York City, William E. Anderson, Chicago, Ill., Richard K. Parsell, William F. Noval, Kenyon & Kenyon, New York City, Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., for appellant.

Kenneth J. Burns, Jr., Chicago, Ill., John R. Swindler, Harold J. Birch, Washington, D. C., Raymond, Mayer, Jenner & Block, Chicago, Ill., Irons, Birch, Swindler & McKie, Washington, D. C., of counsel, for appellee.

Before SCHNACKENBERG, CASTLE and CUMMINGS, Circuit Judges.

CASTLE, Circuit Judge.

Hewitt-Robbins, Inc., the plaintiff-appellant, brought this suit in the District Court as the assignee of Dischinger U.S. Patent No. 3,069,027, issued December 18, 1962, for "Reclaiming Method and Apparatus". Plaintiff charged Link-Belt Company, the defendant-appellee, with infringement, and sought both injunctive relief and damages. The defendant denied validity and infringement and interposed two counterclaims: (1) for declaratory judgment that the patent is invalid and not infringed; and (2) for declaratory judgment of noninfringement by the reclaiming apparatus which defendant contracted to supply to Koppers Company, Inc., of Pittsburgh, Pennsylvania, for erection in Eregli, Turkey, on the grounds that the "parts * * * supplied by defendant have never been assembled or combined into a reclaiming apparatus within the United States."

Defendant moved on affidavits for a summary judgment in its favor under the second counterclaim, and after depositions were taken and filed the District Court filed a memorandum opinion and entered an order granting defendant's motion for partial summary judgment and declaring that the defendant did not infringe the patent with respect to the ore bedding and reclaiming facilities erected in Eregli, Turkey. The court further determined, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure (28 U.S.C.A.), that there was no just reason for delay and directed entry of final judgment upon the issue adjudicated. The defendant appealed.

The undisputed material facts can be summarized as follows:

The patent in suit relates to an apparatus for "reclaiming" bulk particulate material (such as coal, ore, etc.) from outdoor storage piles thereof in which a bridge, spanning the pile and adapted to be self-propelled along parallel rails on either side thereof, has a carriage capable of traversing the bridge back and forth across the face of the pile. Supported by the carriage is a wheel having buckets around its perimeter, this wheel being arranged to revolve in a vertical plane at right angles to the face of the pile. As the bucket wheel rotates, and as the carriage moves it from side to side across the foot of the pile, its lowermost buckets sweep the ground surface under the bridge and scoop piled material towards the foot of the sloping pile. Material scooped up by the buckets is carried up to a point near the top of the wheel's circle of rotation where it is discharged by gravity and falls upon a transverse conveyor belt located on the bridge. This transverse conveyor transports the material to one end of the bridge where it falls upon a permanently mounted ground conveyor, and is carried by the latter

to the desired point, such as a blast furnace.

The asserted claims of the patent are combination claims, each of which recites in common the combination of at least three elements as the claimed reclaimer invention, *viz.*, an "elongated frame", or bridge, a "carriage movably supported on the frame", and a "bucket wheel rotatably mounted on the movable carriage" or digging means. Claim 16, to which plaintiff makes specific reference, requires a fourth element, a "harrow" or rake, also mounted on the carriage. The purpose of the harrow is to prevent the buckets from undercutting the sloping face of the pile, which would cause undesirable avalanching of the material. The harrow is mounted so as to move back and forth across the sloping face of the pile, is adjusted to approximately the angle of repose of the material in the slope, and operates simultaneously and cooperatively with the bucket wheel to create a steady downward trickle of material to the lowermost buckets.

Prior to issuance of the patent, defendant entered into a contract with Koppers to supply a reclaimer for erection in Eregli, Turkey. Performance of the apparatus was guaranteed. Defendant agreed to provide in Turkey both an erection superintendent to direct the assembly and installation of the reclaimer and a field representative to supervise initial operations and assure meeting the performance guarantee. Following issuance of the patent, the reclaimer parts embraced in the contract specifications, were manufactured by defendant or its designees in the United States. No complete combination of any claim of the patent ever was assembled in the United States.

Defendant made a few sub-assemblies to check clearances and took some measurements, as between bolt holes, to insure fit when the apparatus was assembled in Turkey. No operational tests of even a single element of the patented combination ever were made. The sub-assembly and fit-up made at defendant's plant embraced only the following:

(a) The bucket wheel and its buckets were fitted together while the wheel (without its axle, bearings or drive sprocket) lay flat on its side on the floor of defendant's Colmar, Pa., plant.

(b) The bucket wheel without its buckets or drive sprocket was fitted into the carriage frame. The transfer belt conveyor, without the belt, and the rotary transfer table were assembled in place. Only the rotary transfer table was powered. This subassembly rested upon steel saw-horses preventing movement in any direction. The buckets could not be assembled on the wheel because there wasn't room.

(c) The wheeled trucks or hangers which are a necessary part of the carriage and allow it to be suspended from and move across the bridge were not assembled to the carriage frame or with the bridge. Only the spacing of the holes for the mounting bolts on the wheeled trucks was checked with a fibre board template.

(d) The main horizontal span of the bridge was not assembled. Distances between bolt holes in the two bridge end support legs and bridge supporting wheel beams were checked with a tape.

(e) The rake was not assembled, or was it connected to the carriage.

The reclaimer parts were shipped in numerous separate shipments, forwarded at different times, spread over a three-month period, to the port of exportation and thence transported to Turkey. Many parts were outside the United States and on the high seas or actually in Turkey before other parts were even manufactured. The reclaimer was first completely assembled in Turkey. It was assembled under the direction of an erection superintendent supplied by the defendant but paid for by Koppers. Following the erection of the reclaimer in Turkey, he supervised the initial operation of the apparatus at defendant's expense and made the tests, adjustments, and modifications of the apparatus necessary to produce the guaranteed performance.

Affidavits filed with defendant's motion set forth as reasons why all the parts were at no time completely assembled together, tested or placed in operable relationship within the United States that the apparatus was too large to set up as a whole in defendant's shop, that some parts were shipped before others were fabricated, and that shipment required numerous separate packages or pieces.

The District Court found it apparent that the parts supplied by defendant were at no time assembled together, tested or placed in operable relationship within the United States. The court concluded that the defendant's activities in the manufacture, sale and shipment disclosed by the record did not constitute an infringement by the defendant of the plaintiff's patent. The court reasoned that such manufacture and sale in this country of parts for an apparatus to be assembled outside the territorial limits of the United States does not fall within the purview of 35 U.S.C.A. § 271, which provides in pertinent part:

" * * * whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

The main contested issue presented by plaintiff's appeal is whether in a sale for export the presence of the assembled elements of the patented combination within the United States is a prerequisite to the existence of infringement.

Plaintiff contends that inasmuch as under the terms of the contract here involved and the application of relevant provisions of Pennsylvania law the sale of the accused structure for erection in Turkey [1] constituted a sale of a single commercial unit (12A Pa.Stat.Ann. § 2–105 (1959)), as disinguished from a sale of the individual separate parts, and that title passed to the purchaser (Koppers) when delivery of the components was completed f. o. b. the carrier at the plant of manufacture (12A Pa.Stat.Ann. § 2–401; Harvey Probber, Inc. v. Kauffman, 181 Pa.Super. 281, 124 A.2d 699; Dentzel v. Island Park Ass'n, 229 Pa. 403, 78 A. 935, 33 L.R.A.,N.S., 54) makes it immaterial that the sale was not preceded by either complete assembly or actual use of the patented combination in the United States. And, in this connection, the plaintiff points out that prior to delivery the defendant made such factory fit-ups and tests of subassemblies as it considered necessary to assure that the mechanism when erected in Turkey would be complete and operative, supplied the purchaser (Koppers) with erection drawings and complete instructions for assembly, furnished the services of an employee to superintend the assembly and erection, and after erection of the apparatus in Turkey tested, adjusted, and modified it to meet performance specifications and defendant's guarantee.

Plaintiff urges that the use of the disjunctive in defining the grant of a patent (35 U.S.C.A. § 154) and its infringement (35 U.S.C.A. § 271, "makes, uses or sells") evidences that "selling" without either "making" or "using" may constitute infringement, and that considerations relevant to the construction of the pertinent venue provision (28 U.S.C.A. § 1400) and the trend of authorities applying the "choice of law" principles in multi-state tort conflict of laws situations indicate that "sells" as used in § 271 should be construed by recourse to the law of the jurisdiction (Pennsylvania) having the most significant relationship with the occurrence and with the parties.

But whatever impact the law of Pennsylvania has upon the contractual relationship between the defendant and the purchaser (Koppers), and whatever considerations may properly have relevance in either a determination of venue under § 1400 or a choice of law in the resolution of a conflict of laws question, we are of the opinion that the considera-

---

1. For the purposes of its motion for summary judgment, solely, the defendant concedes that erection of the structure in the United States would constitute infringement.

tions the plaintiff here advances are not determinative of whether in the context of § 271 a sale of the "patented invention" took place "within the United States". It is settled that the law of Pennsylvania may not be permitted to encroach upon the Federal patent law directly or indirectly to "give protection of a kind that clashes with the objectives" of such Federal law. Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231, 84 S.Ct. 784, 788, 11 L.Ed.2d 661. Thus, State standards prescribed to measure the "unit" which is the subject of a contract of sale, or to fix the time when title shall be deemed to have passed, cannot be determinative of what constitutes a patented invention or whether the "invention" has been sold within the United States. And, plaintiff's reliance upon Union Asbestos & Rubber Company v. Evans Products Company, 7 Cir., 328 F.2d 949, is misplaced. In that case demonstrations of the accused device within the district of suit, together with other activities within the district, were relied upon as "proof of 'sale'" within the district for venue purposes. Not only was the device assembled in completely operable form and its operation demonstrated, but this Court took occasion to expressly recognize (328 F.2d 949, 952) that:

> "The test [for an act of infringement] is less strict when venue is challenged, for otherwise a disposition of the venue question would also be one on the merits wherever venue was sustained."

We are here dealing with a question of substantive law, and one which can admit of no conflict of laws problem. Sears, Roebuck & Co., supra. Consequently, we find wholly unpersuasive the plaintiff's attempted analogy to problems governed by choice of law principles.

■■ If anything is settled in the patent law, it is that a combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant. Aro Mfg. Co. Inc. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592. We deem it equally clear

that unassembled elements of a combination patent do not constitute the "patented invention."

■ In granting summary judgment on defendant's second counterclaim the District Court relied upon Cold Metal Process Company v. United Engineering & Foundry Co., 3 Cir., 235 F.2d 224, and Radio Corporation of America v. Andrea, 2 Cir., 79 F.2d 626, as affording clear precedents that the manufacture and sale in this country of parts of an apparatus to be assembled outside the territorial limits of the United States does not infringe a combination patent limited to the embodiment of those parts as elements in combination. We agree.

In *Andrea* it was held that sales of unassembled elements of a patented combination for foreign export and assembly do not constitute infringement. The Court in reversing the District Court's award of a preliminary injunction stated:

> "No wrong is done the patentee until the combination is formed. His monopoly does not cover the manufacture or sale of separate elements capable of being, but never actually, associated to form the invention. Only when such association is made is there a direct infringement of his monopoly, and not even then if it is done outside the territory for which the monopoly was granted."

We read *Andrea* as standing for the proposition that a combination claim of a United States patent is not infringed absent presence of the combination in assembled form within the United States. The Court found no infringement even though the radios in question were furnished with two elements of the three-element patented combination assembled in final configuration in a radio set leaving only the simple insertion of the third element, the vacuum tubes (separately packaged but contained in the same carton with the radio), to be carried out abroad. The case proceeded to trial on the substantive issue of infringement and again came before the Circuit Court of appeals (90 F.2d 612). Evidence ad-

duced at the trial established that before leaving the United States each of the radios in question had actually been fully assembled and subjected to operational tests by the defendant. It was then disassembled, by removal and separate packaging of the tubes, for shipment in the single carton. The Court held that the assembling and testing constituted an infringing use of the patented invention; and that there was infringement by the sales—which entailed the complete assembly of the combination of the invention within the United States prior to disassembly for export.

In *Cold Metal,* the defendant was the licensee of the plaintiff. Controversy arose with respect to royalties due on defendant's production and sale of steel rolling mills. A portion of the production and sales involved concerned mills, all parts of which were manufactured in the United States, but with respect to which the combination recited by the patent claims was never completely assembled within the United States. Assembly occurred outside of the United States, after export. The critical facts were identical to those presented in the instant appeal. The defendant, United Engineering, had manufactured most of the parts but had obtained some from another manufacturer. The contracts for the mills were executed in the United States, payment was received in the United States, and the contracts provided for delivery to the purchaser or its representative f.a.s. at a designated port in the United States. As to these mills, initially completely assembled and erected outside the United States, the Court said:

"This brings us to the consideration of the second group of mills, all the parts of which were manufactured in the United States, but which were shipped unassembled to foreign countries and there assembled and used. The master held that these mills were not within the license because, if there had been no license, United would not have been either a direct or a contributory infringer with respect to them.

He based his conclusion upon the rule laid down by the Court of Appeals for the Second Circuit in Radio Corporation of America v. Andrea, 1935, 79 F.2d 626, a case involving the sale for export of unassembled radio sets involving a patented combination when assembled."

and after quoting extensively from the *Andrea* case, continued:

"We are in full accord with the rule thus laid down in the Andrea case and we think that the master and the district court were right in applying it here. Its force, in our view, is not impaired by the later opinion of the court after final hearing in the same case, 2 Cir., 1937, 90 F.2d 612, which held that the defendant had infringed the combination patent there sued on in view of evidence that the radio sets in question had been completely assembled in this country and tests of operation made after which they were disassembled and shipped to purchasers abroad. We do not quarrel with the conclusion of the court that such assembling and testing constituted a making and use of the patented combination in this country. In the present case, however, no such assembling or testing in this country took place. Accordingly the rule laid down in the first Andrea opinion applies here rather than that stated in the second."

The dictum in Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 187 F.2d 1, 3, to which plaintiff directs attention, that:

" * * * while ordinarily it is true that mere place of assembly is immaterial, and one cannot avoid infringement by merely disassembling—or rather, waiting to assemble the elements of a combination patent, * * "

is of no aid to it here. The statement was not made in the context of an initial and only presence of the invention in complete assembly outside the United States.

Kreplik v. Couch Patents Co., 1 Cir., 190 F. 565; Electric Pipe Line, Inc. v. Fluid Systems, Incorporated, 2 Cir., 231

F.2d 370; and Ellett v. Klein, (D.C. E.D.Pa.) 22 F.2d 807, also cited by the plaintiff, but where complete assembly of the combination of the invention occurred, and was intended to occur, within the United States are likewise inapposite.

We are of the opinion that the District Court's conclusion, upon which its award of summary judgment is predicated, represents the application of correct legal criteria.

The judgment order of the District Court appealed from is therefore affirmed.

Affirmed.