**The LAITRAM CORPORATION,**
**Plaintiff,**

v.

**DEEPSOUTH PACKING CO., Inc.,**
**Defendant.**

**Civ. A. No. 67–861.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 10, 1970.

See also D.C., 301 F.Supp. 1037.

Lewis H. Eslinger, Guy W. Shoup, New York City, Louis B. Claverie, New Orleans, La., for plaintiff.

Harold J. Birch, Washington, D. C., C. Emmett Pugh, New Orleans, La., for defendant.

RUBIN, District Judge:

The defendant, Deepsouth Packing Co., Inc., has requested a modification of the injunction issued on June 30, 1969 to make it clear that it does not prohibit the manufacture and sale of a slitter and deveiner unit in unassembled form for export to a Brazilian customer. The defendant will supply all of the parts necessary for the complete operation of the slitter and deveiner; it will be necessary for the buyer only to assemble the unit after arrival, provide electrical current and water. Assembly will require some mechanical skill. The seller proposes to do the assembly itself in Brazil.

Mr. Justice Black, concurring in part and dissenting in part in Lear, Incorporated v. Adkins, 1969, 395 U.S. 653, 89 S.Ct. 1902, 1914, 23 L.Ed.2d 610, noted, "[t]he national policy expressed in the patent laws, favor[s] free competition and narrowly limit[s] monopoly * * *."

"[I]n rewarding useful invention, the 'rights and welfare of the community must be fairly dealt with and effectually guarded.' Kendall v. Winsor, 21

How. 322, 329, 16 L.Ed. 165 (1859). To that end the prerequisites to obtaining a patent are strictly observed, and when the patent has issued the limitations on its exercise are equally strictly enforced. * * * Once the patent issues, it is strictly construed. United States v. Masonite Corp., 316 U.S. 265, 280, 62 S.Ct. 1070, 1078, 86 L.Ed. 1461 (1942), it cannot be used to secure any monopoly beyond that contained in the patent, Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 492, 62 S.Ct. 402, 405, 86 L.Ed. 363 (1942), the patentee's control over the product when it leaves his hands is sharply limited, see United States v. Univis Lens Co., 316 U.S. 241, 250–252, 62 S.Ct. 1088, 1093–1094, 86 L.Ed. 1408 (1942), and the patent monopoly may not be used in disregard of the antitrust laws, see International Business Machines Corp. v. United States, 298 U.S. 131, 56 S.Ct. 701, 80 L.Ed. 1085 (1936) ; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 463–464, 42 S.Ct. 363, 367, 66 L.Ed. 708 (1922)." Sears, Roebuck & Co. v. Stiffel Company, 1964, 376 U.S. 225, 230, 84 S.Ct. 784, 788, 11 L.Ed.2d 661.

■ Every court of appeal that has considered an actual situation in any way resembling the one here proposed has held that the sale of a product for export in unassembled form is not an infringement of the domestic patent. In Radio Corporation of America v. Andrea, 2 Cir. 1935, 79 F.2d 626, 627, the court considered the matter with respect to a combination patent. On a motion for a preliminary injunction, it was shown that the defendants manufactured all of the components of the patented radio receivers exclusive of vacuum tubes. The tubes were purchased by the defendants in the open market. To operate the receiver it was necessary only to insert the vacuum tubes into the sockets provided for them and to connect the receiver by means of a wire and plug provided for that purpose to a source of electrical power, such as the electric lighting system in a private home. The court held that the sale of receiver and vacuum tube separately solely for export was not an infringement and denied the injunction, saying:

"Nor is this conclusion so highly technical as it may at first blush appear. No wrong is done the patentee until the combination is formed. His monopoly does not cover the manufacture or sale of separate elements capable of being, but never actually, associated to form the invention. Only when such association is made is there a direct infringement of his monopoly, and not even then if it is done outside the territory for which the monopoly was granted. This is the basis for the doctrine of contributory infringement, which permits the elements of a patented combination to be sold in this country with the intent that the purchaser shall make and use the invention abroad. Bullock Electric & Mfg. Co. v. Westinghouse Electric & Mfg. Co., 129 F. 105 (C.C.A.) ; Computing Scale Co. v. Toledo Computing Scale Co., 279 F. 648, 678 (C.C.A. 7) ; In re Amtorg Trading Corporation, 75 F.2d 826, 831 (Cust. & Pat.App.). Not disputing this principle of law when only part of the elements of a patented combination are involved in the sale, the plaintiffs apparently contend that it is inapplicable when all the elements are sold together, though disassembled and intended to be put into operable relationship only abroad. No authority has been cited which puts any such limitation upon the doctrine of contributory infringement; and on principle none such is justifiable. By their sales for export the defendants were guilty of neither direct nor contributory infringement." 79 F.2d at 628–629.

After the case had been heard on the merits, this matter was again before the Court of Appeals for the Second Circuit, Radio Corporation of America v. Andrea, 2 Cir. 1937, 90 F.2d 612. Additional facts introduced at the final hearing indicated that, before exporting them, the defendants assembled and used the receivers with the vacuum tubes in their

sockets to determine the marketability of the receivers. Thus, the entire combination was completed and used in the United States. Thereafter, the tube was removed from its socket, and the receiver and the tube were packed in the receiver cabinet and sold. The tubes were placed in a separate carton and this, with the receiver, was placed in a larger carton. The purchaser needed only to connect the tube by inserting it in the socket. No adjustment was required; "no screw or nut need be tightened." The court found there was an infringement and said:

> "Where the elements of an invention are thus sold in substantially unified and combined form, infringement may not be avoided by a separation or division of parts which leaves to the purchaser a simple task of integration. Otherwise a patentee would be denied adequate protection. Cf. Eibel Process Co. v. Minnesota [& Ontario] Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523." 90 F.2d at 613.

It distinguished the situation presented at the time of its prior opinion by the circumstance that it had now been shown that the receiver and tubes were assembled completely and tests of operation were made before exportation. "The sales for the completed receiving sets were made within the territorial limits of the United States and shipped in export. The single package contained all the elements of the combination." 90 F.2d at 614.

The decree was then modified although Judge Swan dissented on the basis of the original opinion. Plaintiffs argue that Judge Swan was correct in saying that the prior opinion was in effect overruled; a majority of that court did not think so.

Nor, later, did the Third Circuit. In Cold Metal Process Co. v. United Engineering and Foundry Co., 3 Cir. 1956, 235 F.2d 224, the court dealt with interpretation of a license. In doing so it was required to determine the scope of the patent. The court quoted with approval from, and relied on, the rule laid down in the first *Andrea* decision saying:

> "Its force, in our view, is not impaired by the later opinion of the court after final hearing in the same case, 2 Cir., 1937, 90 F.2d 612, which held that the defendant had infringed the combination patent there sued on in view of evidence that the radio sets in question had been completely assembled in this country and tests of operation made after which they were disassembled and shipped to purchasers abroad. We do not quarrel with the conclusion of the court that such assembling and testing constituted a making and use of the patented combination in this country. In the present case, however, no such assembling or testing in this country took place. Accordingly the rule laid down in the first Andrea opinion applies here rather than that stated in the second." 235 F.2d at 230.

In Hewitt-Robins, Inc., v. Link-Belt Company, 7 Cir. 1966, 371 F.2d 225, the defendant sold a structure for erection in Turkey. It was suggested that, under Pennsylvania law, this constituted the sale of a single commercial unit, title passed in the United States, and it was immaterial that the sale was not preceeded by either complete assembly or actual use of the patented combination in the United States. The court said that Pennsylvania law was not controlling, and held that the manufacture and sale of the apparatus did not constitute an infringement of the United States patent, saying,

> "We read *Andrea* as standing for the proposition that a combination claim of a United States patent is not infringed absent presence of the combination in assembled form within the United States." 371 F.2d at 229.

The court also considered the *Cold Metal* decision and affirmed the district court opinion holding that there had been no infringement.

Only one decison has been cited that is said to hold to the contrary, the unreported opinion of Judge Learned Hand in

Westinghouse Electric and Manufacturing Co. & Radio Corporation of America v. Experimenters Information Service, Inc., S.D.N.Y.1924. This opinion is based on a motion for preliminary injunction. The facts are not clear, but it appears that there was a sale and delivery of a complete set of parts. The opinion does not indicate whether this was intended for export or domestic use, nor does it indicate whether assembly would take place in the United States or in a foreign country. On the other hand, the cases relied upon by Judge Hand as authority for finding infringement, Strobridge v. Lindsay, Sterritt & Co., 1881, 6 F. 510 and Spirella Co. v. Nubone Corset Co., 1910, 180 F. 470, 473, involved patented articles intended for assembly and use within the territorial United States. The decision antedates all the jurisprudence of the circuit courts referred to above. Under the circumstances, I do not think it can be relied on to support a contrary doctrine.

It may be urged that the first *Andrea* result is not logical—or that it is at best law logic, which John Quincy Adams told John Marshall was "an artificial system of reasoning, exclusively used in courts of justice, but good for nothing anywhere else." But it is founded on twin notions that underlie the patent laws. One is that a combination patent protects only the combination. The other is that monopolies—even those conferred by patents—are not viewed with favor. These are logic enough.

For these reasons, the court does not believe that the injunction, as entered, prohibits the sale proposed. There is, therefore, no reason to modify the terms of the injunction itself.

The proposed advertising would indicate to the public in the United States that shrimp deveining machines are available for sale in the United States. In fact, the defendant has no such items for sale except infringing ones, and the advertisement is, in my opinion, misleading. The court is of the opinion that such an advertisement constitutes a violation of the injunction and will modify the injunction, if required, to prohibit such advertisements hereafter.

Counsel for the mover will present such order as may be appropriate in the light of this opinion.